G. S. KIMBERLY ET AL. V. J. M. MORRIS ET AL.

No. 1028.

1. **Local Option—Election Notices—Cumulative Statutes.**—The local option law is not void because it does not require that notices shall be posted in public places; the provisions of this statute are cumulative and not in conflict with the general election laws, which must be complied with.

2. **Same—Refunding Tax on Unexpired License.**—The failure to provide for refunding the tax on unexpired licenses is no objection to the validity of the statute.

3. **Amendment of Statute—Striking Out Part of Statute.**—An amendment was made of certain sections of the "Revised Civil Statutes," instead of the "Revised Statutes;" the new law also purported to amend articles 3239a, 3239b, and 3239c, when no such articles are contained in the Revised Statutes. *Held:*

   1. That the designation "Revised Civil Statutes" is unobjectionable.

   2. That as the original articles of the Revised Statutes which were enumerated, and their amendments, embrace everything in question in the case, the statute would be good if articles 3239a, 3239b, and 3239c were stricken out as unconstitutional.

4. **Local Option—Discrimination Between Voters For and Against Prohibition not Unconstitutional.**—The Legislature has authority, within the limits prescribed, "from time to time," to fix the time of holding elections for prohibition, either for the county or any subdivision of the county.

5. **Same—When Vote of Precinct is Annulled by a Subsequent County Election.**—A precinct has no vested right in the results of an election in its prescribed limit which would prevent the county from subsequently holding an election for the county limit; but if prohibition fails to carry in a county, local option established in a precinct previous to such election would not be disturbed.

6. **Commissioners Court—Ministerial Act—Mandamus.**—The Commissioners Court in passing upon a petition of more than 250 voters of a county for a local option election in the county, when its refusal to issue the order is based on the ground "that the law authorizing it was unconstitutional, and because precinct number 2 had local option," did not exercise a judicial function, and in such case can be compelled by mandamus to obey.

7. **Mandamus—Practice—Right of Voter to Bring Suit.**—Where voters of a county have petitioned the Commissioners Court to order an election for prohibition, which has been wrongfully refused, any one of such voters may institute and maintain an action of mandamus to compel the making of such order.

8. **Same—Change in Membership of Commissioners Court.**—The right involved in a mandamus suit against the Commissioners Court is against them as a body and not as individuals; and where, after the case has been decided below, there has been a change of membership by the election of new members, the rights involved will not be altered.

APPEAL from Hopkins. Tried below before Hon. E. W. TERHUNE.

*Frank E. Scott,* for appellants.

*Templeton & Crosby,* for appellees.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought in the District Court of Hopkins County by appellant, G. S. Kimberly, in his own behalf, and representing 405 other citizens and qualified voters of Hopkins County, for a writ of mandamus to compel the County Commissioners Court of Hopkins County to issue an order for an election under the local option law, to determine whether intoxicating liquors shall be sold in said county. The pleading set up substantially the following issues:

The petition sets out that plaintiff and 405 other citizens, all voters in Hopkins County, who have great interest in the public welfare and morals of the people, allege that the sale of intoxicating liquors is detrimental to the public welfare, and is a public nuisance and a menace to good society and government, and inimical to the political, social, and moral welfare of the people. That in the exercise of a constitutional privilege, in order to have an election to determine whether or not the sale of intoxicating liquors should be prohibited in said county, they presented to the Commissioners Court this valid petition in due form, at a regular session, February 15, 1894, which had been filed February 10, asking the court to order such election throughout the county, which was rejected by the court and the election refused. That no issue of fact was raised, and no question made as to the form and substance of the petition. That because of such refusal petitioners were denied the public right to have the election held, and there was no sufficient cause known to petitioners for the refusal. That petitioners have no legal remedy to compel the holding of the election, wherefore they pray for mandamus.

The Commissioners Court answered by general and special demurrers, and pleaded that as a matter of judgment it had decided that it had no authority to order the election, because the provisions of the law authorizing it were unconstitutional; and because precinct number 2 had local option.

The other defendants, after setting up facts to show they were proper parties, adopted the court's answer, and further pleaded a vested right for two years in the defeat of local option in precinct number 1, in 1893. They further pleaded several constitutional objections to the statute and election prayed for, which will be discussed as far as deemed material.

The findings of fact of the court below are not controverted, and in the absence of a statement of facts, will be adopted, as follows:

"1.   On February 10, 1894, plaintiff and 405 other signers, all citizens or voters in Hopkins County, filed a petition with the clerk of the County Court of Hopkins County, a copy of which is set out in plaintiffs' application, praying for an election to determine whether or not the sale of intoxicating liquors shall be prohibited in Hopkins County. This petition was presented to the Commissioners Court at a regular session, February 15, 1894; protests were filed by citizens of the county, especially by parties residing in precinct 1 and precinct 2, assigning various reasons why no election should be ordered.   The court, on hearing, refused to order the election.

"2.   There are eight justice precincts in the county.   In 1893 valid local option elections had been held in precinct 1 and precinct 2, prohibition being defeated in 1 and having carried in 2.   The proper orders were made in each case declaring the result, and the adoption of the law in precinct 2 was duly promulgated, and local option has been in force in that precinct ever since.

"3.   Among other reasons, the court refused to order the election over the county, because precinct 2, in its opinion, had no right to participate.

"4.   Defendants Morris, Stephens, Williams, Sims, and Chapman constituted the Commissioners Court of Hopkins County.   The other defendants are licensed retail liquor dealers in precinct 1, their place of residence, and own valuable stocks of liquor and saloon appliances, and their licenses expire as set out in their answers."

There are many assignments of error presented, and we will not attempt to consider them in detail, but will consider the questions involved in the order they are presented in the conclusions of the court below.

We concur in the views of the District Court as presented in its first and second conclusions of law, as follows:

1.   "It is urged that the local option law is void, in that it does not require that the notices thereof shall be posted in public places.   This objection is not well taken.   The provisions of this statute are cumu-

lative of and not in conflict with the general election laws, which must be complied with.

2.  "It is urged that the law is void, because it does not provide for refunding the tax on unexpired licenses.  The failure to so provide is no objection to the validity of the statute.  The dealer knew the voters had a right to prohibit his business when he took out his license, and assumed the risk voluntarily, and the adoption of local option simply revokes his license.  Robertson's case, 12 Texas Ct. App., 541.  The law does provide for refunding the tax, but fails to provide a means whereby it may be done."

3.  It is contended that the local option statute approved March 29, 1893, entitled, "An act to amend articles 3227, 3228, 3229, 3230, 3231, 3232, 3233, 3234, 3235, 3236, 3237, 3238, 3239, 3239a, 3239b, 3239c, title 63, of the Revised Civil Statutes of the State of Texas," is unconstitutional and void, on the following grounds:

(1)  That it attempts to amend certain sections of the *"Revised Civil Statutes,"* instead of the *"Revised Statutes."*  This position is untenable. The Constitution provides, in article 3, section 43, as follows:  "The first session of the Legislature under this Constitution shall provide for revising, digesting, and publishing the laws," etc.  Under this section the Sixteenth Legislature passed "A bill to be entitled, 'An act to adopt and establish the *Revised Civil Statutes of the State of Texas.'* " It is true that in the body of the act this compilation of the laws is also referred to and adopted as the "Revised Statutes," but section 3 of the act provides as follows:  "That the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall have no application to the Revised Statutes, but said statutes shall constitute the law of this State respecting the subjects to which they relate, and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."  Rev. Stats., p. 718.

The same Legislature which adopted the Revised Statutes passed twenty-seven acts amending them, and of these, twenty-four of such acts referred in the captions to the *"Revised Civil Statutes."*  Every Legislature since then has followed this designation, and if the legislative intent has any weight, there can be no question upon this point. The legislative intent is not only clear, but there can be no possible doubt, from the caption of the Act of 1893, what law was amended.

(2)  It is claimed that the act amends articles 3239b and 3239c of the Revised Civil Statutes, that no such articles are in the Revised Statutes, and hence the act is unconstitutional.  In the first place, it can not be questioned that all of the statutes amended are embraced in the original Revised Statutes, except articles 3239a, 3239b, and 3239c, and even if these articles were not there, the Act of 1893, amending articles 3227 to 3239, inclusive, could not for that reason be called in question.  These original articles and their amendments embrace everything in question in this suit.  Article 3239a provides for a contest of the election.  Article 3239b provides for refunding the license tax for

the unexpired term (and is fully provided for in an independent act). Article 3239c provides for giving the act in charge to the grand jury, and some other specific provisions in regard to its enforcement.

The statute would be good without either of three last mentioned sections, and the litigation in this case growing out of the refusal of the County Commissioners Court to submit the question of local option to the voters of the county, has no concern whatever with these sections. Even if these three sections, as amended, were conceded to be unconstitutional (but we expressly disclaim any such concession), it would not render the whole act void, nor would it in any way affect the questions involved as to the duty of the county commissioners to order the election. Mr. Cooley says: "If when the unconstitutional portion (of an act), is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must stand." Cool. Const. Lim., 215. This language has been adopted by our Supreme Court. Tel. Co. v. The State, 62 Texas, 634.

The local option statute has been enforced for years without the aid of articles 3239a, 3239b, and 3239c, as amended by the Act of 1893, and if necessary could still be enforced. There is no possible phase of this case in which it becomes necessary to pass upon these three sections. But if there could be any serious question raised in regard to the constitutionally of any part of the Act of 1893—even including articles 3239a, 3239b, and 3239c—the whole question is set at rest by the able and exhaustive opinions of Judges Simkins and Hurt in the recent cases of Ex Parte Segars, 32 Criminal Reports, 555, and Aaron v. The State, 33 Texas Criminal Reports, 103; Oshe v. The State, 37 Ohio State, 502.

4. The court below correctly held, that there was nothing in the contention that the act was unconstitutional because it discriminates between the voters for and those against prohibition. The Constitution expressly places the matter in the hands of the Legislature. By section 20, article 16, as amended in 1891, it is provided as follows: "The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice precinct, town, city, or such subdivision of a county as may be designated by the Commissioners Court of said county, may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

"From time to time" gives the Legislature full authority within the limits prescribed by law, to fix the time of holding such elections as often as may be deemed proper, either for the county or any subdivision of a county. Ex Parte Cox, 28 Texas Ct. App., 537.

"5. It is further contended that the act is void, because it authorizes a county to vote on local prohibition within less than two years after the precincts have voted upon it, in that it takes away vested

rights in the precincts. In this case it is especially contended, that precincts numbers 1 and 2 in Hopkins County had voted on prohibition in those precincts within two years from the time the petition was filed in the Commissioners Court asking for an election in the county; that it had carried in number 2 and been defeated in number 1, and that these precincts had a vested right in the results so obtained, and that they would be deprived of such vested rights if an election should be held in the county. This position is untenable. There is nothing in the act contravening the constitutional provision upon the subject. The Constitution does not pretend to fix, or even to suggest, the time at which elections may be held, nor does it fix any vested right in the result; but leaves it to the Legislature to "enact a law whereby the qualified voters * * * by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

The Act of 1893 provides, in the amended article 3238, as follows: "Nor shall the holding of an election in a justice precinct in any way prevent the holding of an election immediately thereafter for the entire county." The whole subject is expressly placed in the hands of the Legislature by the Constitution, and the law passed is constitutional. In the case of Aaron v. The State, above, Judge Hurt says: "By reference to the various provisions of the local option statutes, we are informed that the people of the entire county can not express their views upon this subject so as to defeat or repeal local option in any subdivision of the county. Nor can the people of a precinct by vote defeat prohibition in any subdivision of that precinct, town, or city. The county may force prohibition by a vote over precincts which are not in favor of it, and so may a precinct over cities, towns, or subdivision thereof that may not be in favor of it, but can not force, by vote, repeal of it in any town, city, or subdivision thereof. The people of the county outside of the territory to be affected have no right to vote at all as to the law in that subdivision. Again the people of the county have never voted on the proposition that local option should or should not prevail in the whole county. A great many voters might oppose prohibition for the county, and yet heartily support it for precincts in which they have no police force, as well as for other reasons sufficiently cogent to their minds."

The decision of the court below upon this point seems to be based upon the case of Wisenhunt v. The State, 18 Texas Court of Appeals, 491. That decision was rendered by a divided court (Judge Hurt dissenting) upon a construction of the original law as set out in the Revised Statutes, and not upon a constitutional objection. No doubt one of the objects of the Legislature in passing the statute of 1893 was to meet the construction of the old statute by a majority of the court in that case. In any event, the statute of 1893 did meet it, and there can be no question of the proper construction of the letter of the statutes. There can be no more reason for holding that a precinct has

such a vested right in the result in that prescribed limit as will prevent the county from holding an election for such county limit, than there would be for holding that a county or subdivision would have such a vested right as would prevent the entire State from voting on prohibition. If such a rule should prevail, it would present the novel aspect of a very small fraction or subdivision of a State, to wit, a county or subdivision of a county, thwarting the will of the people of the whole State. It is true that State prohibition would not come under the same section of the Constitution, but the question of vested rights would be the same. In this case, neither precinct number 1 nor precinct number 2, nor the people of such precincts, acquired any vested right to the result of an election under the law. The law itself charged them with notice that a different result might be reached by a vote of the people of the whole county.

6. The voters of precinct number 2 having carried prohibition in that precinct, would have a perfect right to vote in an election to determine whether prohibition should be carried in the county. If it was carried in the county, prohibition would be thus extablished in the whole county; if it failed to carry in the county, the result would in no sense, disturb the law as first established in the precinct. Aaron v. The State, supra, and other authorities cited above.

7. It is further contended that the County Commissioners Court, in passing upon the petition of the 405 voters of Hopkins County, exercised a judicial function, and that the writ of mandamus can not issue to compel them to order an election under the law. It will be seen from the above findings of the court below, that the County Commissioners Court based its refusal to issue the order for the election upon the grounds, that "the law authorizing it was unconstitutional, and because precinct number 2 had local option." There was no doubtful or disputed fact upon which they had to pass. The boundaries of the county are fixed by law. There was no question that the 405 petitioners were legal voters of Hopkins County, and that their petition was regularly and legally filed and presented at a regular term of that court. In such a case what was the duty of that court? The law itself answers: "*It shall be the duty of said Commissioners Court to order the election aforesaid whenever petitioned to do so by as many as two hundred and fifty voters of any county.*" The statute is plain and mandatory, and the commissioners had no right to disobey it. In such a case, can they be compelled by mandamus to obey it?

In the case of Samson v. Mercer, 68 Texas, 492, a petition was presented to the mayor of Alvarado, under the Act of April 14, 1883, for an order of election for the purpose of determining whether the corporate limits of the city embraced more than one mile in diameter. It was refused. He was compelled by mandamus to issue the order. In affirming the judgment, Judge Gaines said: "It is well settled, that if the duty an officer is called upon to perform requires the exercise of an act of judgment on his part, his decision is not subject to be re-

vised by a proceeding for a writ of mandamus. * * * And it is apparent that in a proceeding to procure an order for an election under the statute before cited, the mayor is required to determine two facts in order to justify him in making the order for the election: first, that there is a surplus of territory over the limit prescribed by the statute; and second, that at least fifty qualified voters of that territory have signed the petition. If there be any controversy as to the existence of these facts his function is discretionary, and he can not be compelled to order the election. But taking the facts of the petition to be true, as the demurrer admits, the surplus territory exists, and more than the requisite number of voters have signed the petition. In such a case the discretion of the mayor ceases. The act to be done is purely ministerial. His duty becomes absolute, and he can be compelled to perform it.

"The fact that preliminary to his action he must know that there is an excess of territory beyond the statutory requirements, and that the requisite number of voters have signed the petition, does not invest him with the discretion to refuse to order the election, when as a matter of fact, there is no controversy as to the excess, or as to the number and qualification of the signers." See also Brown v. Ruse, 69 Texas, 589; Caviell v. Coleman, 73 Texas, 550; Porter v. the State, 78 Texas 594; Teat v. McCaughey, 85 Texas, 485; Goal v. Townsend, 77 Texas, 464; Railway v. Locke, 63 Texas, 623; Cuse v. McQueen, 25 S. W. Rep., 711; High on Ex. Leg. Rem., 431; Cool. Const. Lim., 6 ed., 784.

In the case of Brown v. Ruse, above, it was held by the Supreme Court that the writ of mandamus was properly issued by the District Court to the County Commissioners Court to compel the issuance of a draft on the County Treasurer to pay a special voucher.

In the case of Caviell v. Coleman, above, it was held that the District Court should issue a mandamus to compel the county judge to approve a teacher's voucher.

In Porter v. The State, above, it was held that the writ of mandamus was properly issued by the District Court to compel the county judge to appoint trustees for a new school district.

In Goal v. Townsend, above, it was held by the Supreme Court, that with the proper parties before the court, a writ of mandamus would lie from the District Court to compel the County Commissioners Court to allow one of its members (whom they wrongfully held to be disqualified) to perform his duties as such commissioner.

"Where a public duty is imposed upon county commissioners for public reasons, in the exercise of which there is no discretion left to them, mandamus is the appropriate remedy to compel the performance of that duty." 14 Am. and Eng. Encyc. of Law, 203, note 5, and authorities there cited.

8. The only remaining point which we deem it important to consider is, whether the appellants have a right to bring this suit. This

question was left undetermined by the court below, although the learned judge in his able opinion cited a number of authorities bearing upon the point.

Under the Act of 1893, it is made the imperative duty of the County Commissioners Court, upon the petition of as many as 250 voters of a county, to order the election. Thus the right to put the act of legislation for that particular county in motion is expressly placed in such voters. Upon their petition the duty of the commissioners becomes mandatory. In such voters is vested the right, if they deem it expedient and proper for the protection of the morals of the county, to cause an election to be ordered to determine whether or not the sale of intoxicating liquors shall be prohibited in such county. As yet there is no law in force in such county prohibiting such sale, and it rests with the people of the county to say at the ballot-box whether or not such law shall be put in force. The result may or may not be in favor of prohibition. If it is carried, it is the duty of the State to enforce it; if not carried, it can not be enforced. But the right to have it submitted under the statute is one which the law gives to the petitioners. The public may or may not be in sympathy with such a law in that county, but that question is one which the petitioners are authorized to have tested. All the law officers of the State may be opposed to it; but still the right exists in the petitioners to put the machinery in motion to have the election held. Mr. High, in his work on Extraordinary Legal Remedies, sections 430 and 431, clearly lays down the doctrine, that the right to the writ of mandamus is one which may be pursued by private individuals for the enforcement of a private right or a public duty. In the latter clause, he says: "And while the authorities are somewhat conflicting, yet the decided weight of authority supports the proposition, that where the relief is sought merely for the protection of private rights, the relator must show some personal or special interest in the subject matter, since he is regarded as the real party in interest, and his rights must clearly appear. On the other hand, when the question is one of public right, and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator at whose instigation the proceeding is instituted need not show that he has any special or legal interest in the result, it being sufficient to show that he is a citizen, and as such interested in the execution of the laws."

In the following section (492), after showing the contrary views of some of the State courts, he further says: "However satisfactory the reasoning of the courts in the States here referred to may appear, yet the undoubted weight of authority in the previous section, and the distinction there noticed, is too well established to be easily overthrown."

The same doctrine is laid down, and supported by numerous authorities in American and English Encyclopædia of Law, p. 218.

In the case of Railway v. Hall, 91 United States, 355, such a right is clearly recognized by the Supreme Court of the United States. The

court says: "There is, we think, a decided preponderance of American authority in favor of the doctrine that private persons may move for a mandamus to enforce a public duty, not due to the government as such, without the intervention of the government law officers." The doctrine is fully recognized in California. Hyatt v. Allen, 54 Cal., 353; Gibbs v. Bartlett, 63 Cal., 117. The last named case is quoted with approval by our own Supreme Court (Sanson v. Mercer, 68 Texas, 493), and will bear a rigid examination. The petitioner prayed for a writ of mandamus to compel the defendants, as members of the board of election commissioners of the city and county of San Francisco, to provide for calling and holding an election for the purpose of submitting to the qualified electors the question of ratifying a charter for its government prepared and proposed by a board of fifteen publishers. The court held that the mandamus should issue. Our Supreme Court, in the case of Sanson v. Mercer, above, sustained the right of private citizens to the writ, and says: "The case of Gibbs v. Bartlett, 63 California, 117, is directly in point, and supports our views."

We could cite numerous decisions of others States supporting those views, but deem it unnecessary to do so. This case presents a much stronger question than that of a mere private citizen attempting to enforce a public duty to the State, in which all the citizens of the State are likewise interested. It is in the nature of a legislative right vested by the Constitution and laws of the State in the qualified voters of the counties, to be put into action at the instance of a specified number of such qualified voters. They have a right as electors to submit the question. They are expressly authorized by law to become the movers in such legislation, and at their instance the duty becomes imperative upon the County Commissioners Court to order the election. It is a duty they owe to the petitioners under the express provisions of the law. Where the commissioners refuse, such petitioners can force them to act.

[Since writing the above, the question has been submitted to the Supreme Court, and it has been held, that any one or more of the petitioners are entitled to the writ of mandamus.]

9. The views above expressed render it necessary to reverse the case. It has been made to appear to us that since the cause was decided below, there has been some change in the membership of the old County Commissioners Court, by the election of new members. This does not materially alter the rights involved, as the suit is against the county commissioners, not as individuals, but as a body of county commissioners.

The judgment is therefore reversed and the cause remanded, with directions to the court below to grant the writ of mandamus, as prayed for by the petitioners, directed to the County Commissioners Court of Hopkins County, as now constituted.

*Reversed and remanded.*

Delivered May 1, 1895.