## EX PARTE F. MEYER.

### No. 5121.  Decided October 23, 1918.

### Rehearing denied November 27, 1918.

**1.—Statewide Prohibition—Constitutional Law—Local Option.**

Section 2 of the Act of the Thirty-fifth Legislature, Called Session, chapter 24, page 37, known as the statewide prohibition law, is in violation of section 20 of article 16 of the Constitution of the State of Texas and is therefore inoperative, and conflicts with the legislative Acts passed in obedience to said Constitution and known as the local option laws.  Prendergast, Judge, dissenting.

**2.—Same—Law in Force—Statute Construed—Local Option Still in Force.**

Prior to the passage of the Act of the Thirty-fifth Legislature, known as the statewide prohibition law, no effort was made to put statewide prohibition of the sale of intoxicating liquors in effect in this State, and the said local option law, with certain amendments, is still in force and is not annulled by section 2 of said Act of the Thirty-fifth Legislature, which can not operate in territory where the local option law has been adopted by the people.  Following Dawson v. State, 25 Texas Crim. App., 670, and other cases.

**3.—Same—Legislative Power—Statutes Construed—Legislative Construction.**

It is not within the power of the Legislature to impose upon a community, which had theretofore adopted the local option law, penalties and forfeitures which did not exist at the time of such adoption, and which rule had many times, line upon line and precept upon precept, been enforced and established. Following Lewis v. State, 58 Texas Crim. Rep., 351.  And the construction of the Constitution, subsequent to the rendition of the opinion of Dawson v. State, supra, by this court has been adopted by the Legislature.  Prendergast, Judge, dissenting.

**4.—Same—Statutes Construed—Local Option—People's Consent Necessary.**

There are many localities in this State which adopted the local option law at a time when under its provisions its violation constituted a misdemeanor; others adopted it after the offense became a felony, etc., and the Legislature is without power to make in any of these instances the punishment of the sale of intoxicating liquors more severe, without the consent of the people affected.

**5.—Same—Local Option Law—Statutes Construed—Repeal by People Only.**

The local option law provides that it shall remain in force until such time as the qualified voters therein may, at a legal election held for the purpose, by a majority vote decide otherwise, and the people can not be deprived of the rights accorded to them by the Constitution and the decisions of this court, and it is beyond the power of the Legislature to repeal the said local option law existing within the various localities in which it has been adopted by the people.  Following Elliott v. State, 44 Texas Crim. Rep., 575, and other cases.

**6.—Same—Statutes Construed—Constitutional Law.**

The principles fixed in our jurisprudence, as construed by the courts of last resort, are incompatible with the exercise of the power attempted in section 2 of said Act of the Thirty-fifth Legislature. Prendergast, Judge, dissenting.

**7.—Same—Former Decisions—Judicial Construction—Obiter Dictum.**

The case of Bell v. State, 28 Texas Crim. App., 96, was upon the regulation of the sale of intoxicating liquors, and not upon a prohibition law, and is therefore obiter dictum and not in point. Following Ex parte Hollingsworth, 203 S. W. Rep., 1102, and other cases. Prendergast, Judge, dissenting.

**8.—Same—Decisions of Other States—Legislative Power—Police Power.**

Whatever may be said as to the power of the Legislature of other States, with no express provisions of their Constitutions on this subject to legislate in regard to the liquor traffic under the general police power, the same does not apply in this State, and this has been the legislative construction of this State. Prendergast, Judge, dissenting.

**9.—Same—Constitutional Law—Intoxicating Liquors—Exclusive Power.**

The Constitution of Texas, section 20, article 16, is a positive direction to the Legislature to pass a law whereby the people, in the counties and subdivisions named, might by majority vote decide from time to time whether the sale of intoxicating liquors shall be prohibited within their limits, and is an implication against the Legislature doing anything which would render inoperative the law which the Constitution commands shall be passed. Prendergast, Judge, dissenting.

**10.—Same—Constitutional Law—Local Option—Police Power.**

The people of the localities named are given by the Constitution a part of the legislative power, and the right to make these decisions can be exercised by them only, and the fact that they are vested with the power to make the decision implies that the decision of the question is not left with the Legislature under the police power. Following State v. Texas Brewing Company, 106 Texas, 121. Prendergast, Judge, dissenting.

**11.—Same—Constitutional Law—Legislative Power—Voters' Cooperation.**

The command to the Legislature, in section 20, article 16, Constitution of Texas, to pass a law whereby the voters may determine whether the sale of intoxicating liquors shall be prohibited, defines the circumstances under which prohibition of such sales may be made effective; these circumstances require the act of both the Legislature and the voters, and neither can effect the object without the co-operation of the other. Following Parks v. West, 102 Texas, 11.

**12.—Same—Statutes Construed—Constitutional Law—Precedent—Result.**

If section 2 of the Act of the Thirty-fifth Legislature were sustained, the power vested in the people of the localities by the Constitution can not be exerted; it is in opposition to the exercise of these powers and destroys the vitality of section 20, article 16, of the Constitution, and the power to annul, suspend or render dormant this part of the Constitution would carry with it the power to overturn any of its provisions. This was not the intention of the framers of the Constitution of Texas. Prendergast, Judge, dissenting.

**13.—Same—Military Necessity—Constitutional Law.**

The contention that the Legislature had authority, under the law of military necessity, to prohibit the sale of intoxicating liquors throughout the State, notwithstanding there was within the Constitution an express or implied prohibition of the enactment of such measure when no such military necessity existed, is untenable.

**14.—Same—Public Policy—Military Necessity—Statutory Prohibition.**

It is apparent that the statutory prohibition law (section 2, Act of the Thirty-fifth Legislature) was not passed to meet a necessity to protect the soldiers training in this State from the evils of intoxicating liquors during the war, as the operation of the law was deferred for more than three months after its passage. Following Ex parte Hollingsworth, 203 S. W. Rep., 1102.

**15.—Same—History—Local Option—Statewide Prohibition—Legislative Intent.**

The history of the transaction conveys the impression that section 2 of the Act of the Thirty-fifth Legislature was not passed to cover a temporary military necessity, but that it represents the will of the Legislature to permanently depart from the local option method of prohibiting the sale of intoxicating liquors under the Constitution.

**16.—Same—Power to Make War—United States—Congress—Police Power.**

While a State may be impelled to enact police regulations by conditions growing out of war, yet the power exercised must be within the limits prescribed or implied in the State Constitution, and the power to make war, and the power that may lawfully be exercised incident thereto, is not in the State, but in the United States by act of Congress.

**17.—Same—Legislative Power—Military Necessity.**

The State Legislature can not, on the assumed existence of a military necessity, pass a law prohibited by the State Constitution, and the Federal government, equipped with war power, is not so impotent to protect its armies that it must impel the State Legislature to do that which the State Constitution forbids.

**18.—Same—Judicial Power—Legislative Act—Presumption.**

The courts indulge a presumption in favor of the validity of legislative Acts, but the presumption is not conclusive, and the judicial branch of the government can not abdicate its power.

**19.—Same—Police Power—Constitutional Law.**

No authority can be found which lays down the proposition that the police power is superior to constitutional provisions, or can suspend the Constitution when the question arises on a conflict of superior authority, and the police power is always subordinate to constitutional authority.

**20.—Same—Bill of Rights—Legislative Power—Police Power—Inherent Power.**

It can not be contended in the face of the bill of rights that the Legislature, by reason of the police power, can suspend any clause of the Constitution, for the Legislature only acts under delegated authority, its grant of power being found in the Constitution. Legislative bodies under American institutions do not and can not act by original or inherent power. Following Pratt v. State, 53 Texas Crim. Rep., 281.

**21.—Same—Constitutional Law—Self-executing Power.**

There is no force in the contention that because article 16, section 20, of the Constitution is not self-executing, that therefore, the Legislature may disregard, set it aside or overrule it; all the provisions of the Constitution of Texas are self-executing to the extent that anything done in conflict therewith is null and void. Following Hemphill v. Watson, 60 Texas, 679. Prendergast, Judge, dissenting.

## From Bexar County.

Original habeas corpus proceeding, asking release from arrest under a

warrant for a violation of selling intoxicating liquors, under section 2, Act of the Thirty-fifth Legislature, known as the State-wide prohibition law.

The opinion states the case.

*Newton & Newton, Q. U. Watson,* and *J. J. Eckford,* for relator.— On question of unconstitutionality of section 2, Act of Thirty-fifth Legislature: State v. Texas Brewing Co., 106 Texas, 121, 157 S. W. Rep., 1166; Lewis v. State, 58 Texas Crim. Rep., 359, 127 S. W. Rep., 808; Adams v. Kelly, 17 Texas Civ. App., 479, 44 S. W. Rep., 529; Cohen v. Houston, 205 S. W. Rep., 757; Ex parte Hollingsworth, 203 S. W. Rep., 1102, and cases cited in the opinion.

On question of military necessity: Ex parte Hollingsworth, 203 S. W. Rep., 1102, and cases cited in the opinion.

*B. F. Looney,* Attorney General, *C. M.. Cureton,* and *W. A. Keeling,* Assistant Attorneys General, for the State.—On question of constitutionality of Act: Bell v. State, 28 Texas Crim. App., 96; Ex parte Townsend, 64 Texas Crim. Rep., 350, and cases cited in dissenting opinion.

On question of obiter dictum: Union Pacific Ry. Co. v. Mason, etc., Ry. Co., 199 U. S., 160; Carstairs vs. Cochran, 52 Atl., 601; Railroad Companies v. Schutte, 103 U. S., 118.

On question of military necessity: Storrie v. Railway Co., 92 Texas, 129; Ex parte Anderson, 46 Texas Crim. Rep., 372; Selective Draft Cases, 245 U. S., 366; Ex parte Coupland, 26 Texas, 386; State v. Holm, 164 N. W. Rep., 989; Halter v. Nebraska, 205 U. S., 34; Moore v. State of Ill., 55 U. S., 13; Fox v. Ohio, 46 U. S., 410; Cross v. North Carolina, 132 U. S., 131; Davis v. Beason, 133 U. S., 333; Crosley v. Calf, 168 U. S., 640; Grafton v. United States, 206 U. S., 333; Reid v. Colorado, 187 U. S., 137.

On question of police power: Com. v. McCann, 94 S. W. Rep., 645; Brown v. Com., 98 Ky., 652; Anderson v. Com., Bush, 488; Board of Trustees v. Scott, 101 S. W. Rep., 944; Ex parte Fields, 39 Texas Crim. Rep., 50; Whisenhunt v. State, 18 Texas Crim. App., 491; Ex parte Rippy, 44 Texas Crim. Rep., 72.

MORROW, JUDGE.—Relator is under arrest charged with the sale of intoxicating liquors in violation of section 2 of the Act of the Thirty-fifth Legislature, which reads as follows:

"The sale, barter, or exchange of spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication, except for medicinal, scientific, mechanical and sacramental purposes, are hereby prohibited within this State." (Acts 35th Leg., 4th Called Session, chap. 24, p. 37.)

He seeks release on writ of habeas corpus, insisting that this section

of the Act of the Legislature is inoperative because in conflict with section 20 of article 16 of the Constitution, which reads:

"The Legislature shall at its first session enact a law whereby the voters of any county, justice precincts, towns or cities (or such subdivisions of a county as may be designated by the Commissioners Court of said county), may by a majority vote, determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

This clause, except the part in parenthesis, was incorporated in the Constitution adopted in 1876. The part in parenthesis was put in by amendment adopted in 1891. In June, 1876, the Fifteenth Legislature, in obedience to this provision of the Constitution, enacted a local option law providing for the holding of elections in the counties and subdivisions named, and providing that when at such an election the majority of the votes were cast "for prohibition" the sale of intoxicating liquors, except for medicinal and sacramental purposes, be absolutely prohibited within the prescribed bounds "until such time as the qualified voters therein may, at a legal election held for the purpose, by a majority vote, decided otherwise." The Act also contained a provision to the effect that if prohibition carried, another election within the same limits should not be held within less than twelve months. Gammel Laws, vol. 8, p. 862.

Prior to the passage of the Act of the Thirty-fifth Legislature mentioned, no effort was made to put absolute prohibition of the sale of intoxicating liquors in effect in the State, or any part of it, except by means of the local option law which, with certain amendments, is still in force, unless annulled by the Act in question, and during the forty years intervening since its passage such prohibition has been put in force by a vote of the people in localities embracing the greater part of the State. From what has been said it follows that the exact question here presented has never been before the courts. In numerous instances the construction of section 20, article 16, supra, in connection with the local option laws, has been involved and passed upon. Examples are Lewis v. State, 58 Texas Crim. Rep., 359; Ex parte Elliott, 44 Texas Crim. Rep., 577; Cross v. State, 49 Texas Crim. Rep., 437; Lawhon v. State, 26 Texas Crim. App., 101; Robinson v. State, 26 Texas Crim. App., 82; Dawson v. State, 25 Texas Crim. App., 670; Ex parte Fields, 39 Texas Crim. Rep., 55; Ex parte Rippy, 44 Texas Crim. Rep., 77; Adams v. Kelley, 17 Texas Civ. App., 479, 44 S. W. Rep., 529; Ex parte Pollard, 51 Texas Crim. Rep., 488; Ex parte Mills, 46 Texas Crim. Rep., 224; Schwartz v. State, 103 Texas, 119; County v. Beall, 98 Texas, 104; Fox v. State, 53 Texas Crim. Rep., 153; Keller v. State, 87 S. W. Rep., 669; Ex parte Brown, 38 Texas Crim. Rep,, 303; Stalworth v. State, 16 Texas Crim. App., 345; Holley v. State, 14 Texas Crim. App., 507; Texas Brewing Co. v. State, 106 Texas, 121.

It is obvious that section 2 of the Act, which prohibits the sale of intoxicating liquors, can not operate in territory where the local option

prohibition law has been adopted by the people, unless we are prepared to abandon the settled construction given by. this court to section 20, article 16, of the Constitution. An example of this construction is found in the case of Dawson v. State, 25 Texas Crim. App., 670, wherein are announced principles which have so frequently been applied by this court that we deem it not amiss to reproduce, to some extent, the language used in that decision wherein Judge Willson, writing the opinion, said:

"The extent of the power conferred upon the Legislature by section 20, supra, was to enact a. law enabling the qualified voters of the localities designated to determine, in accordance with such law, whether the sale of intoxicating liquors shall be prohibited within specified limits. No power was conferred upon the Legislature to prohibit the sale of intoxicating liquors, but such power was vested alone in the qualified voters of the localities named—such power to be exercised by them in the manner to be provided by the Legislature. It is only by a majority vote of the qualified voters of a locality that the sale of intoxicating liquors within the limits of said locality can be prohibited. . . . This will, this power on the subject, is absolute and exclusive in the qualified voters of the locality. . . . If the power exists in the Legislature to deprive the locality of the right to have another election, for the period of two years, the same exists to deprive them of such right for ten, twenty or other number of years. . . . They, the qualified voters, enacted the law; it is their creature called into existence by their direct agency, and they alone have the supreme and exclusive power, by a majority vote, to repeal it. It is not within the power of the Legislature to add to or take from, or in any manner infringe upon the law as adopted by the will of the voters—or even, in our opinion, repeal it in that particular locality. Whenever the law has been legally adopted by any particular locality, the subject has passed beyond the domain of legislative action, so that a different law can not, without the sanction of the qualified voters of that locality, given in a legal manner, be imposed upon such locality. . . . Any other view, it seems to us, would invade the constitutional rights of the people of such localities and foist upon them a law which,. perhaps, they never would have adopted, a law with respect to which their 'option' had never been consulted ·or ascertained; a law enacted not by them but by the Legislature, without constitutional right."

Deciding that an Act of the Legislature changing the offense of violating the local option law making it a felony could not be effective in a county that adopted the law while the offense was a misdemeanor, this court, in an opinion written by Judge Ramsey, after an exhaustive review of the subject, the decisions and legislative enactments, says: "The first time the question came before this court was in the case of Dawson v. State, 25 Texas Crim. App., 670. This decision was rendered by this court when composed of Judges White, Hurt and Willson. While it does not involve the precise question here raised, in principle,

the rule there announced is conclusive of the question before us. . . .
The decision in that case has been many times questioned and often
assailed, but has remained the settled rule of this court from that day
until this, and has been in terms applied by the court to the very ques-
tion here raised. . . . We have thus reviewed, at more length than
might ordinarily seem either desirable or necessary, the decisions of this
court, which, for almost a quarter of a century, through many changes
of the personnel of its members, have uniformly and without dissent
held to the proposition that it is not within the power of the Legis-
lature to impose upon a community which had theretofore adopted the
local option law, penalties and forfeitures which did not exist at the
time of such adoption, and which rule had many times, by line upon
line and precept upon precept, been enforced and established." Lewis
v. State, 58 Texas Crim. Rep., 351. Adverting to the Acts of the Leg-
islature passed subsequent to the rendition of the opinion in the Daw-
son case, the court in the Lewis case states the conclusion that the con-
struction of the Constitution therein had been adopted by the Legis-
lature. This rule of approval of judicial interpretation would likewise
apply to the re-adoption of the clause of the Constitution in 1891.
Black on Interpretation of Laws, p. 32.

There are many localities in the State which adopted the local option
law at a time when, under its provisions, its violation constituted a
misdemeanor. Others adopted it after the offense became a felony with
the benefit of suspended sentence. Under the rule established in the
Lewis case, supra, and often since applied, prosecutions for the sale of
intoxicating liquors are punished in some localities by fine and im-
prisonment; in others by confinement in the penitentiary with the privi-
lege of suspended sentence, and under the principles which are laid
down in the Dawson case, supra, and of which Judge Ramsey, in the
forceful language quoted, declares to constitute the settled rule of this
court, the Legislature is without power to make in any of these in-
stances the punishment for the sale of intoxicating liquors more severe
without the consent of the people affected. The law in question, mak-
ing the penalty a felony in all cases without the benefit of suspended
sentence, can not operate.

The local option prohibition law provides that it shall continue in
force "until such time as the qualified voters therein may, at a legal
election held for the purpose, by a majority vote, decided otherwise."
The law in question puts no limitation upon the time it shall continue
in force, and affords the voters in the locality no option to discontinue
it. In these respects the people of the locality are deprived of rights
which, according to the construction of the Constitution given by this
court in the Dawson case, supra, and reaffirmed in the Lewis case and
others therein cited, of which the Legislature has no right or power to
deprive them. Such right, giving effect to the decisions mentioned,
could be exercised only in the event that the law in question should be
construed as repealing the local option prohibition existing in the vari-

ous localities in which it has been adopted, and this it has been repeatedly declared is beyond the power of the Legislature. See Ex parte Elliott, 44 Texas Crim. Rep., 575, to the effect "that the local option law once adopted in a given territory, remains the law in that territory until it is repealed by the voters of the same territory." See also Ex parte Pollard, 51 Texas Crim. Rep., 488.

Speaking of this clause of the Constitution, Chief Justice Brown, writing the opinion of the Supreme Court, said: "The section of the Constitution quoted provides a method—a referendum—by which the voters of a given territory may exercise the sovereign power of legislating upon this subject, which places the law adopted by them above legislative authority, as if it had been embraced in the Constitution." State v. Texas Brewing Co., 106 Texas, 121.

From what has been said it is apparent that in the greater part of the State there is in force prohibition of the sale of intoxicating liquors under a law which is not within the control of the Legislature, because it and its provisions, by the exercise of primary sovereignty vested in the people of the localities by the Constitution, has been fixed in a manner depriving the Legislature of the power to annul or change it without the consent of the people adopting it, and among the provisions so fixed is that which declares that the law shall remain in force only until the people of the district shall decide otherwise; the right to so decide at an election being expressly stated in the law adopted. The principles fixed in our jurisprudence in the manner stated by the court in Lewis v. State, are incompatible with the exercise of the power attempted in the Act in question. They are consistent only with the theory that the clause of the Constitution mentioned so restricts the general power of the Legislature that, while it may pass and enforce laws regulating and restricting the sale of intoxicating liquors, it can only prohibit them in the manner prescribed by the section of the Constitution in question, that is, by a vote of the people affected.

We are referred to the case of Ex parte Bell, 28 Texas Crim. App., 96, as an authority for the contrary view. The prosecution in that case was for pursuing the occupation of a liquor dealer without posting his license in a conspicuous place. No fault can be found with the decision of the court that there was nothing in section 20 of article 16 of the Constitution which was an impediment to the validity of the law in question. The Legislature has now, and at all times since the Constitution was adopted, the power to forbid the saloon business, and the power to destroy it implies a lesser power of imposing conditions upon its conduct. The law involved in the Bell case was not a prohibition law, but a regulation of the sale of intoxicating liquors. Regulation makes the sale conform to prescribed rules. Prohibition interdicts it altogether for beverage purposes. Century Dict., vol. 6, p. 505; Joyce on Intoxicating Liquors, sec. 139; Ruling Case Law, vol. 15, pp. 258-262; Bowman v. State, 38 Texas Crim. Rep., 14; Ex parte Hollingsworth, 83 Texas Crim. Rep., 400, 203 S. W. Rep., 1102.

The expression used by Judge Hurt, in writing the opinion in the Bell case, supra, to the effect that the clause in the Constitution mentioned would not prevent the Legislature from passing a law prohibiting the sale of liquor throughout the State, was upon a question not involved. It is in a class of remarks treated in all jurisdictions as dictum of which our Supreme Court said: "Dicta, or even matters of argument not necessary to the decision of the question before the court, as is well known, is never regarded as deciding the law of the case, or as furnishing a rule of action for the court itself in which the case is pending, or even binding upon the judge by whom the opinion was prepared." Smith v. Alston, 40 Texas, 141. The subsequent decisions of this court do not indicate that the expression referred to was regarded as an authoritative decision of the question. Among the cases cited in the opinion in the Lewis case are cases following, by special reference, the Dawson case, and written by Judge Hurt. The case of Ex parte Brown, 38 Texas Crim. Rep., 295, in the decision of which Judge Hurt participated, referring to section 20 of article 16 of the Constitution, says: "It occurs to us that this expression of the will of the people on the subject is exclusive of any other method to be pursued by the Legislature. Whatever may be said as to the power of the Legislature of other States, with no express provisions of their Constitutions on this subject, to legislate in regard to the liquor traffic under the general police power, the same does not apply with us. We have an express provision on the subject, and that provision was intended to prescribe a method of dealing with the question, and to exclude any other rule or method, at least so far as local option territory is concerned."

In Ex parte Vaccarezza, 52 Texas Crim. Rep., 109, a case involving the construction of a repealing clause of a license law, Judge Brooks, writing the opinion, by way of argument says: "No one seriously insists that the Legislature should pass a prohibition law applying to the whole State without first submitting to the people and having them adopt a constitutional amendment authorizing said Act," adding that whether a constitutional amendment would be necessary was a question upon which the legal profession entertained conflicting views.

Prior to the passage of the present Act the treatment of the subject by the legislative department of this State has been indicative of the view that the clause in the Constitution was an impediment to the establishment of prohibition throughout the State by legislative enactment. This conclusion is drawn from the fact that in 1887, and again in 1911, the Legislature, possessing the requisite two-thirds majority, enacted a joint resolution referring to the people a proposed amendment to the Constitution, the purpose of which was to establish Statewide prohibition of the sale of intoxicating liquors.

The convention framing the Constitution considered the various methods of dealing with the liquor traffic, including regulation, prohibition and local option. See Const., 1875, pp. 80, 103, 556. These

methods were well understood at the time. Freund on Police Power, p. 204; 23 Cyc., pp. 76-78. The language selected by the framers of the Constitution, when its meaning is clear, controls the court in interpreting it. (8 Cyc., 732.) The terms of section 20, article 16, are not susceptible of the construction that the Legislature was simply given the permission to enact a local option law. It is mandatory. Holley v. State, 14 Texas Crim. App., 515; Cooley on Const. Lim., 4th ed., p. 94.

The Constitution, containing a positive direction to the Legislature to pass a law whereby the people, in the counties and subdivisions named, might by majority vote decide from time to time whether the sale of intoxicating liquors should be prohibited within their limits, contains an implication against the Legislature doing anything which would render inoperative and ineffectual the law which the Constitution commands shall be passed. Cooley, Const. Lim., 8th ed., p. 127.

"Where the means for the exercise of a granted power are given, no other or different means can be implied as being more effective or convenient." 8 Cyc., 742. "Being simply a chart containing limitations upon power, whenever the Constitution declares how power may be exercised over any subject, then no power can be exercised over that subject in any manner not clearly within the plain import of the language of the Constitution." Holley v. State, 14 Texas Crim. App., 515. The means in our Constitution named for establishing prohibition of the sale of intoxicating liquors, is that the Legislature shall pass the law, and the people in the localities named may adopt it. The people of the localities named are given, by the Constitution, a part of the legislative power, the power to decide whether the Legislature shall prohibit the sale of intoxicating liquors in their localities, and the power to decide whether it shall continue in force. The right to make these decisions being conferred by the Constitution upon the people mentioned, can be exercised by them only. The fact that they are vested with the power to make the decision, implies that the decision of the question is not left with the Legislature. In the absence of the clause of the Constitution in question, there would be no restriction upon the police power vested in the Legislature to prohibit the sale of intoxicating liquors. Whether it should be prohibited or permitted would be a matter of legislative discretion. If the power of the Legislature to pass laws affecting the whole State is not abridged by the clause in question, its right to pass a license law effective throughout the State can not be denied. It does not possess that power. State v. Texas Brewing Co., 106 Texas, 121.

"When the Constitution defines the circumstances under which a right may be exercised, the specification is an implied prohibition against legislative interference to add to the condition." Cooley, Const. Lim., 4th ed., p. 78; Parks v. West, 102 Texas, 11.

The command to the Legislature in section 20, article 16, supra, to pass a law whereby the voters may determine whether the sale of intoxicants shall be prohibited, defines the circumstances under which

prohibition of such sales may be made effective. These circumstances require the act of both the Legislature and the voters; neither can effect the object without the co-operation of the other.

If the law in question be sustained, the powers vested in the people of the localities by the Constitution can not be exerted. It is in opposition to the exercise of these powers, and destroys the vitality of the clause in the Constitution. The power to annul, suspend or render dormant this part of the Constitution would carry with it the power to overturn any of its provisions. The framers of the Constitution did not intend that the representatives of the districts of the State should have the authority to set at naught the powers committed to the people of the localities named. On the contrary, the Constitution points out a uniform and exclusive means of establishing prohibition of the sale of intoxicating liquors, withdrawing the subject from the political ferment which would result from its debate at each recurring session of the Legislature. The subject was made one of local self-government, within the control of the people of the localities named, to remain so until such time as the whole people of the State should by their votes change the Constitution.

"Since the Constitution is intended for the observance of the judiciary as well as the other departments of government, and the judges are sworn to support its provisions, the courts are not at liberty to overlook or disregard its commands." Ruling Case Law, vol. 6, p. 72.

The relator is ordered discharged.

*Relator discharged.*

PRENDERGAST, JUDGE (dissenting).—The Statewide statute prohibiting the sale of intoxicating liquors, without any doubt, is constitutional, valid and legal in every respect.

There is no provision in our Constitution, which directly or by implication, prohibited or prevented the Legislature from enacting it.

It is common knowledge—known by all, that the Legislature of every State in the United States of America, and this State, has the undoubted police power and authority to prohibit the sale of intoxicating liquors as a beverage within its whole bounds—Statewide—unless there is some provision in its Constitution which clearly forbids it. This has been expressly held many times by the Supreme Court of the United States, and by the Supreme Court of every State which has passed upon the question, and by every law writer who has written upon the subject.

The Legislature has this police power and authority as a necessary incident of the sovereignty of the State—the power of self-preservation, and protection of its men, women and children from the awful curse of such liquors; for, "by the general concurrence of opinion of every civilized and Christian community, there are few sources of crime and misery to society equal to the saloon. The statistics of every State show a greater amount of crime and misery attributable to the use of such liquor obtained at saloons than to any other source." And because

"the confederated intelligence of mankind has come to realize that the sale and use of such liquors is a profligate waste of the material resources of the country, and is a universal impairment of its man-power. Also because experience has developed the truth that the liquor traffic knows no master and knows no law, and is beyond the pale of all adequate regulation," and for that many years it has ruled this country with an invisible iron hand, and for the past few years and now its influence and power has been and is pro-German and against the United States, and the State, in this war.

It was expressly decided by this court, when the judges composing it were Judges White, Willson and Hurt, that section 20, article 16, of our Constitution, in no way deprived the Legislature of said undoubted police power and authority. They so decided—not one time only—but in effect, four times. (Bell v. State, 28 Texas Crim. App., 96; Ex parte Bell, 24 Texas Crim. App., 428; McGuire v. Glass, 15 S. W. Rep., 128; McGuire v. State, 15 S. W. Rep., 918.)

The Supreme Court of the United States unanimously expressly held: "There is nothing in the Constitution of Texas restricting the power of the Legislature in reference to the sale of intoxicating liquor," . . . citing the Bell cases supra. (Gioza v. Tiernan, 148 U. S., 661, 37 L. Ed., 601.)

Judge Henderson, while a member of this court, so held. (Ex parte Viccarazza, 52 Texas Crim. Rep., 117-118.)

Section 20, article 16, of our Constitution is simply a plain and clear command to the Legislature to enact a law whereby the voters of any county, justice's precinct, town, city (or other subdivision of the county), by a majority vote, may determine that the sale of intoxicating liquors shall be prohibited within its local limits alone. Certainly it does not say to the Legislature, thou shalt not enact a law prohibiting the sale of such liquors in the whole State. This court, Judge Hurt writing, held, "the object of this provision was not to deprive the Legislature of its power over the subject"; . . . and further; to say that local option divests the Legislature of the power to prohibit the sale of such liquors all over the State, "is a proposition too preposterous for discussion," and "is absurd." (Bell case supra.)

Undoubtedly the constitutional convention, in inserting said section in the Constitution, and the people in adopting it, never for one moment thought or imagined, that they were thereby depriving the Legislature of the necessary police power and authority to prohibit the sale of such liquors all over the State whenever it deemed it necessary or proper, for they knew that the sale and resultant use of such liquors was the greatest curse to mankind. If they had so intended they would have said so in plain and clear language, like they did in many of the sections from 30 to 58, article 3.

Our Constitution divides the powers of the government of this State into three distinct departments—legislative, executive and judicial; and expressly requires that *no person,* or collection of persons, of one of

them, shall exercise any power properly attached to either of the others. (Art. 2, sec. 1.) And vests legislative power in the Legislature exclusively. (Sec. 1, art. 3.) Undoubtedly the power to enact and repeal laws belongs exclusively to the Legislature. This court can not legally repeal any law passed by the Legislature. And if it should do so, it unquestionably illegally usurps power never given it, and never intended it should have.

A law may be as effectually repealed by a court by illegally holding it "unconstitutional," when it is not so, as if it should in express language say a certain law passed by the Legislature, naming it, "is hereby repealed."

Our Constitution prescribes the same oath of office of every officer of each of said three departments. (Sec. 1, art. 16.) Every legislator, and the Governor, takes exactly the same oath, to discharge and perform his duties agreeably to the Constitution of this State, as each of the judges of this court takes. No more. No less. In enacting laws, the legislators, and the Governor in approving them, undoubtedly determines and holds that such laws are constitutional.

By the enactment of the Statewide prohibition law—now, in effect, the same as repealed by the decision herein—the 103 members of the House who voted therefor held it was constitutional, under their solemn oaths. So, the twenty senators, counting the two paired, who voted for it, held it was constitutional, under their solemn oaths. The Governor, too, by approving it, held it was constitutional, under his solemn oath.

Even of the small number of legislators who voted against its passage, but two in the House and one in the Senate, stated they did so because they thought it was unconstitutional. Doubtless none of the others who voted against its passage did so for that reason, but for altogether other reasons. So we have two of the three departments of this State expressly holding said law is constitutional.

The great Democratic convention of this State, at Waco, on September 4th last, expressly and unanimously endorsed said Statewide prohibition law, and unanimously commended the Legislature for enacting it, thereby holding it was constitutional, valid and legal.

A considerable number of said 103 members of the House, and twenty senators, were eminent, learned, and great lawyers of this State. Among those of the House was one who formerly adorned this bench as a member of this court; and one of the senators is the Democratic nominee for one of the judges of this court, the successor of this writer, an eminent, great and learned lawyer, who will doubtless very soon be a member of, and adorn the bench of this court.

And among the members of said Democratic convention were also a large number of the greatest, most eminent and learned lawyers of Texas, at least the equal of any on the bench of any court. The fact that others of the Legislature and convention were not lawyers in no way disqualified them from holding said law constitutional. Such

power is not given alone to lawyers. Others also have it, and have the right to exercise it, and do.

All courts and law writers hold, and this court has held, that in deciding upon the constitutionality of a law no court will declare the law unconstitutional unless it is so beyond a reasonable doubt. That a reasonable doubt must be solved in favor of the legislative action, and the law be sustained.

And yet—and yet, in the very face of said former decisions by this court, by the great judges thereof—Hurt, White, Willson and Henderson—and of said unanimous decisions by the Supreme Court of the United States; and of the vote of 103 members of the House; and of the vote of twenty senators; and of the approval of the Governor; and of the unanimous vote of said Democratic convention—each and all holding that said Statewide law is constitutional, it is now ruthlessly torn from the statute book by Judge Morrow—one judge of this court. This is wrong—radically wrong.

If the decision herein stands, an awful calamity to this great State will occur, for then the iniquitous saloons and liquor traffic, with all their baleful and wicked effects, will be illegally foisted upon a large number of our people—men, women and children, including many of the more than 200,000 soldiers in training, and more than that number of industrial workers, all doing their "bit"—everything they can, to win this atrocious war waged upon us for conquest by the cruel, beastly and inhuman Huns.

It is my intention now to write more fully showing the undoubted validity of said law, if Judge Morrow adheres to his decision upon final hearing upon a motion for rehearing, if one is filed.

For the present I merely write briefly to voice my earnest protest against Judge Morrow's decision.

### ON REHEARING.

#### November 27, 1918.

MORROW, JUDGE.—We have re-examined the subject in the light of the motion for rehearing prepared by the Attorney General, and on the points reviewed in the original opinion it would be but a repetition to restate our conclusions or the reasons therefor. On the phase of his motion embodying the proposition "that the Legislature had authority, under the law of *military necessity,* to prohibit the sale of intoxicating liquors throughout the State, *notwithstanding there was within the Constitution an express or implied prohibition of the enactment of such a measure* when no such military necessity existed," we think the Attorney General misapprehends the existence of the facts and the law upon which he found his proposition.

At the time the law in question was passed there were on the statute books laws which not only forbade, under felony penalty, the sale or gift of intoxicating liquors to a member of the military organization at

any place in the State, but also laws prohibiting·the sale of such liquors to nine-tenths of the civil population, and in addition thereto a Federal regulation establishing a prohibited zone around the military camps, and authority in the President as Commander in Chief of the army to extend or enlarge such prohibition when deemed necessary or advisable.

Recalling the existence of these legal restrictions on the liquor traffic, it is apparent that the statutory prohibition law was not passed to meet a necessity to protect the soldiers training in the State from the evils of intoxicating liquors during the war. The view that it was not to meet an emergency is emphasized by the fact that the operation of the law was deferred for more than three months after its passage. See Local Option Laws; also Acts 35th Legislature, 4th Called Session, ch. 7 and ch. 12; also acts 65th Congress, 1st Called Session, ch. 15, p. 76, sec. 12; Ex parte Hollingsworth, 83 Texas Crim. Rep., 400, 203 S. W. Rep., 1102.

The Governor, in his proclamation calling the Special Session of the Legislature, suggested the enactment of several measures which would, by constitutional means, protect the public health and morals from evils growing out of the fact that the sale of intoxicating liquors was not prohibited in the vicinity of some of the military camps, except in a limited radius, which the Federal government did not wish on its own account to enlarge. These laws were all passed and given immediate effect, and such of them as have been construed by this court have been sustained as a legitimate exercise of the police power under the control of the Legislature. See Ex parte Hollingsworth, supra.

The Governor, in a message to the Legislature, advised against the passage of a law prohibiting the sale of intoxicating liquors on the ground that its constitutionality was questioned by many eminent lawyers, and that the zone law and others mentioned specifically in his proclamation would effect the desired end, stating that "a measure strong because of its certainty was to be preferred over a measure which in reaching too far may incur the risk of failing entirely."

The history of the transaction impresses us with the view that section 2 of the Act was not passed to cover a temporary military necessity, but represents the will of the Legislature to permanently depart from the local option method of prohibiting the sale of intoxicating liquors, which was the method pointed out in the Constitution, and rested on the will of the people in the counties and district affected, expressed by their vote; and to substitute therefor a method resting on the will of the Legislature.

Military necessity, so far as we are advised, does not become the authority for the passage of law. Its functions arise, as we understand, when in the time of war extraordinary and unforeseen emergencies occur in which the protection of the public interests requires for the moment the disregard of private rights, but to justify its exercise "the public danger must be immediate, imminent and impending, and the emergency in the public service must be extreme and imperative, and such as will

admit of no delay or resort to any other source of supply." United States v. Russell, 13 Wall., 623.

The power to make war and the power that may be lawfully exercised incident thereto, is not in the State, but in the Federal government. In the Constitution of the United States we read: "No State shall, without the consent of Congress, engage in war, unless actually invaded, or in such imminent danger as will not admit of delay."

A State may be impelled by conditions growing out of war to enact police regulations that it would not otherwise establish. In making such enactments, however, the power exercised must be within the limits prescribed or implied in the State Constitution.

The people of the United States are at war, maintained through the agencies authorized by their Federal Constitution. They are proceeding according to the organic law of the nation. On the subject we quote from a recent address by a jurist of national reputation:

"While we are at war we are not in revolution. We are making war as a nation, organized under a Constitution from which the established national authorities derive all their powers, either in war or in peace. The Constitution is as effective today as it ever was, and the oath to support it is just as binding." Amer. Bar Assn., 1917, vol. 42, p. 232.

The Federal Constitution declares:

The Federal Constitution declares:

"The Congress shall have power to declare war, to raise and support armies, to provide and maintain a navy, to make rules for the government and regulation of the land and naval forces; to provide for the calling forth of the militia to execute the laws of the Union, suppress insurrection, and to repel invasion; to make all laws which shall be necessary and proper for the carrying into execution of the foregoing powers, and all other powers vested by the Constitution in the government of the United States, or any department or office thereof."

In these are embodied the war powers of the nation. It is said by the Supreme Court of the United States: "The powers delegated to Congress, relating to war, are plenary and exclusive. . . ." Torball's case, 13 Wallace, 297.

The Congress, having power to prosecute war, and not in the Constitution limited as to methods, has broad discretion in the enactment of extraordinary regulations during war. These, however, to be valid must find sanction in the express or implied powers granted to Congress. McCullough v. Maryland, 4 Wheat., 316, 4 L. Ed., 579.

In both peace and war the Legislature, in the passage of laws, must observe the express and implied limitations of the State Constitution, and the Congress must find sanction in the Federal Constitution for its enactments. Neither can exercise unbridled power on the assumption that a necessity exists therefor.

The State Legislature can not, on the assumed existence of a military necessity, pass a law prohibited by the State Constitution, and the Federal government equipped with adequate war power is not so im-

potent to protect its armies that it must impel the State Legislature to do that which the State Constitution forbids.

In the American system of government by the people through agencies, with powers defined and limited by written Constitution, the courts have no power to legislate. Their utmost is to refuse to aid in the enforcement of an Act of the Legislature which transcends the authority vested in that department by the Constitution. The limitations imposed by the Constitution are essential (110 U. S., 576), and there is no menace to constitutional government in requiring their observance, though there is danger thereto in suffering a disregard of them.

No expediency can condone the sanction by the courts of an Act of the Legislature which, as section 2 of this one does, annuls a provision of the Constitution. The part of the Act prohibiting the sale of intoxicating liquors is not merely a failure to do that which the Constitution commands, but does that which renders ineffectual the power conferred by the Constitution on the people of the counties.

The courts indulge a presumption in favor of the validity of legislative Acts, but the presumption is not conclusive. To so regard it would amount to an abdication of the power vested in, and a disregard of duty imposed on, the judicial branch of the government.

The motion for rehearing is overruled.

                                                    *Overruled.*

PRENDERGAST, Judge, dissenting.

DAVIDSON, Presiding Judge (concurring).—The State files a motion for rehearing, alleging the opinion heretofore rendered is erroneous, first, because "it is not shown beyond a reasonable doubt that the Act is unconstitutional; the court should have held it valid; second, that Judge Hurt's opinion in the Bell case is not dicta, and the court should have followed it, and held the Act valid; third, that the court should have held the Act valid under the law of military necessity; fourth, the court erred in holding the local option section of the Constitution a limitation on the police power of the State to enact the Statewide Act, and, fifth, the court erred in holding the local option section of the Constitution a limitation on the police power, and because the opinion of the court violates section 28, article 1, of the Constitution."

These five grounds embody but one proposition, and in it the above five subdivisions center and about it revolve; that is, the police power is superior to constitutional provisions, and by its exercise the Legislature is authorized to suspend the Constitution.

The writer recognizes the proposition as being in a general way correctly stated, that if there is a reasonable doubt of the constitutionality of the Act it should be upheld. This has been decided often, and the authorities are not necessary to be cited. But that is based upon the further proposition that there may be a question of the power of the Legislature to provide under its police powers regulations or enact legislation carrying out the constitutional power invested in the Legislature.

There can be found no case, so far as the writer has been able to ascertain, which lays down the proposition that the police power is superior to the constitutional provisions, or can suspend the Constitution when the question arises on a conflict of superior authority. The police power is always subordinate to constitutional authority. The police power, in a general way, pertains to the legislative department, and is derived from the Constitution, and delegated to the legislative branch of the government by the provisions of the Constitution. The Legislature could not exist except by the provisions of the Constitution. Police power inheres in the Legislature by reason of this granted power. The people framing their Constitution did not delegate authority to the Legislature, or any department of government, to override or abrogate any provision of the Constitution. The power of the courts, of the executive department, and the Legislature finds authority only in the provisions of the Constitution. They are not outside of nor superior to those provisions, and can not be. They exist by reason of the will of the people as expressed in the Constitution.

The contention of the Attorney General, therefore, is that the provisions of the Constitution are not limitations upon the police power to be exercised by the Legislature. This contention is not correct, and can not be sustained. The police power is never a limitation upon the Constitution, but the Constitution is a limitation upon the police power. This ought to be a self-evident proposition without discussion or citation of authority, and so fixed by the provisions of that instrument. A few references to it ought to settle this without citing adjudicated cases.

Article 1, section 2, of the Constitution, the Bill of Rights, provides that: "All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient." It can not be contended in the fact of this language that the Legislature, by reason of the police power, can suspend any clause of the Constitution, for the Legislature only acts under delegated authority, its grant of power being found in the Constitution.

In a general way constitutional provisions are considered as limitations upon legislative power as applied to State governments. This proposition is to be considered from the standpoint of conferred authority, delegation of power. Such limitations can not be used to destroy constitutional provisions, but can only be correctly used for the purpose of carrying into effect those provisions. Legislative power was not given to destroy but to uphold ordained governments. The Constitution was made for and by our citizenship for their use and benefit. Citizenship is not made for the Constitution, but the Constitution is made for the citizenshop. Nor was the citizenship and the Constitution

made for the Legislature, but the Legislature was created to carry into effect the Constitution. The police power is not a limitation upon the Constitution, but the Constitution is a limitation upon police power. The police power is a result of the Constitution to be operated by the Legislature to carry it into execution. These provisions can not be used for suspending, changing or altering the Constitution.

There are many sections in the Constitution directly prohibitive of legislative power or police regulation. Some of these may be found in article 3, which creates the legislative department. It is declared in section 53 of that article that the Legislature shall not grant or authorize the matters therein specified. In section 54 of the same article inhibitions are set out to the effect that the Legislature shall have no power to release, extinguish, etc., any indebtedness, liability or obligation of any incorporation or individual to the State. Section 55 of said article embraces numerous inhibitions against legislative authority, positive and direct in language. These are not necessary here to enumerate. It is not within the power, therefore, of the Legislature to suspend any of the clauses above mentioned. Article 1, section 2, inhibits the exercise of power which would abolish, alter or reform the government, and expressly provides this only can be done by the people. It is directly asserted in said section that this is an "inalienable right" of the people, and all powers of government are specially interdicted from usurping or exercising these powers. It specially excepts from the power of the people themselves and provides that a republican form of government shall not be destroyed, but that it shall remain unrepealable by any power, State or Federal. This the States pledge each other by binding obligations in the Federal government, and bound that government to maintain and guarantee such republican form of government. The contention of the Attorney General, therefore, from this viewpoint can not be sustained, for if sustained it would confer upon the Legislature power to destroy even this form of government. This the people can not do themselves. Legislative bodies under American institutions do not and can not act by original or inherent power. Such authority has not been conferred. Such authority as that body may exercise is but one of delegation by the people through the Constitution. Assumption of original or inherent power by the Legislature would result in the higher and controlling authority over the people through their Constitution, and would be destructive of every principle of self-governing democracy. It was Edmund Burke, the great English orator, who said that: "This change from an immediate state of procuration and delegation to a course of acting as from original power is the way in which all the popular magistracies have been perverted from their purposes." To avoid this result and to effect the purposes of our people as set out in article 1, section 2, of the Bill of Rights, article 17 was placed in the Constitution as the only means by which that instrument may be changed, altered or reformed, and limits that authority to the action of the people directly. This excludes the idea of alteration or changing

the Constitution, or the suspension of its provisions in any other mode
or manner.   The Legislature may suspend laws, but such power is
especially limited for that purpose.   This is to be found in article 1,
section 28, of the Bill of Rights.   The power to suspend laws does not
convey the idea of suspension of the Constitution, or its alteration or
abrogation.   This is the "inalienable right" of the people.   It will be
noticed that our government, as before stated, is republican in form
and in its nature.   It is a representative democracy.   It is based upon
the theory that autocracy, militarism and social democracy shall find
no lodgment with us.   They are excluded as forms of government and
we limit our government to republican form as it was instituted and
guaranteed by State and Federal Constitutions.   A complete refutation
to the position of the Attorney General that the Legislature can suspend
the Constitution or any of its provisions, is found and emphasized in
addition to section 2, article 1, and article 17 already cited, in the pro-
visions of section 29 of article 1, which ordains that:   "To guard against
transgressions of the high powers herein delegated, we declare that
everything in this 'Bill of Rights' is excepted out of the general powers
of government, and shall forever remain inviolate, and all laws contrary
thereto, or to the following provisions, shall be void."   This absolutely
prohibits any action on the part of the Legislature, or other depart-
ments of the government, to do any act or pass any law which may
conflict with either the *"Bill of Rights or the following provisions"* of
the Constitution.   It emphatically declares that all such action or laws
shall be void.   This section reiterates and emphasizes that the power to
the different departments of the government is only one of delegation.
It precludes the idea of original power in any department of the gov-
ernment.   It denounces complete invalidity of all acts which may con-
flict with any provision of the Constitution.   All provisions of the Con-
stitution are by the terms of this section *excepted out of the general
powers of the government,* and clothed with inviolable sanctity, and
shall remain inviolate, not to be infringed by any department of gov-
ernment.   They are more than mandatory and comprehensive in de-
claring inhibitions.   The rule of legislative or official omnipotence finds
no standing in American government or institutions.   It may be that
the British Parliament was clothed with authority to make and unmake
British constitutions, but this idea does not obtain in America, or under
American form of government.   In the creation and erection of Amer-
ican constitutional government, State and Federal, the doctrine of
omnipotence as applied to British Parliament was excluded, and in
its place was substituted the omnipotent or inherent power of the people
to make, alter or change their government.   It was said by one of the
great statesmen of Pennsylvania in the convention ratifying the Federal
Constitution:

"To control the power and conduct of the Legislatures by an over-
ruling constitution was an improvement in the science and practice of
government reserved to the American States.   Perhaps some politician

who has not considered with sufficient accuracy our political systems would answer that in our governments the supreme power was vested in the constitutions. This opinion approached the subject nearer to the truth, but does not reach it. The truth is, that in our governments the supreme, absolute and uncontrollable power *remains* in the people. As our constitutions are superior to our Legislatures, so the people are superior to our constitutions. Indeed, the superiority in this last instance is much greater for the people possess over constitutions control in act, as well as right. The consequence is that the people may change. the constitutions whenever and however they please. This is a right of which no positive institution can ever deprive them."

In fact, the supreme power in our people may be called the panacea in politics and in the science of free government. While it is true that some politicians may have contended that the sovereignty of the government is in the Constitution and not in the people, yet until very recently it has not been contended that these politicians may go to the extent of contending that legislative authority can overturn the sovereign will of the people. These questions have come for review in courts of Texas on various occasions. By numerous decisions the courts of last resort in this State have declared that the Legislature has no authority to make any rule or enact any legislation in contravention of the plain provisions of the Bill of Rights. Pratt v. State, 53 Texas Crim. Rep., 281; Gold v. Campbell, 54 Texas Civ. App., 269, 117 S. W. Rep., 463; Ex parte Farnsworth, 61 Texas Crim. Rep., 353, 135 S. W. Rep., 535; Kemper v. State, 63 Texas Crim. Rep., 1, 138 S. W. Rep., 1025. This proposition was asserted and laid down in Snyder v. Baird, etc., 102 Texas, 4. The language of that decision is emphatic to the effect that the Legislature has no authority to annul any clause of the Constitution. In State v. Moore, 57 Texas, 307, it was held that the Legislature can not withdraw any power from the hands of those in which the Constitution has placed it unless the Constitution expressly so authorizes. It has also been held that the Constitution is the superior and supreme law, and laws or acts of the legislative body in conflict with it, or its provisions are void. Williams v. Taylor, 83 Texas, 667; Higgins v. Rinker, 47 Texas, 385; Galveston Ry. Co. v. Gross, 47 Texas, 428; Huntsman v. State, 12 Texas Crim. App., 619. It is also the declared doctrine in Texas, and has been so held by the courts, that the Constitution may be expanded to give effect to its provisions, but this can not be done to infringe or defeat its purpose or provisions. Harris *v.* State, 7 Texas Crim. App., 212. All provisions of the Constitution are mandatory, and necessarily so. They are not directory. For a collation of a great number of cases so holding see Harris' Ann. Const., at page 219, note 54. It is also held in State v. Durst, 7 Texas, 74, that the provisions of the Constitution are mandatory upon the courts. It has been further held that any decision of the courts holding contrary to the Constitution of this State can have no validity. It is the exer-

cise of unauthorized and unwarranted power on the part of the court. Chase v. Swayne, 88 Texas, 218.

Nor is there any force in the contention that because article 10, section 20, is not self-executing, therefore the Legislature may disregard, set it aside or overrule it. The proposition has been announced and sustained by the decisions and jurisprudence of Texas that any and all provisions of the Constitution are self-executing to the extent that anything done in conflict with such provisions, or in violation of such provisions, are null and void. Hemphill v. Watson, 60 Texas, 679. See also Const., art. 1, sec. 29.

One of the most far-reaching and dangerous propositions asserted by the Attorney General is that the Legislature may suspend the Constitution, or any of its provisions, on account of military necessities. This might find defensive grounds in the military autocracy of Germany, but not in democratic America. The Texas Legislature has no authority to declare war or make treaties. Such power is delegated alone to the Federal government by the States of the Union. If Texas has not the authority to declare war, it would seem to necessarily follow that she could not invoke the police power of the State to enact war measures in conflict with the Constitution. That instrument declares in section 24 of the Bill of Rights that military shall always be subordinate to the civil authority. To sustain the contention of the Attorney General would mean the abolition of the republican form of government and the substitution in its place of a military government. This is beyond comprehension or contemplation in Texas. It is directly foreign to every principle of our government, and the very mention of it ought to be sufficient to show the falsity of the contention. One of the leading features of Texas independence may be quoted thus: "In this expectation they have been cruelly disappointed, inasmuch as the Mexican nation has acquiesced to the late changes made in the government by General Antonio Lopez de Santa Anna, who, having overturned the Constitution of his country, now offers, as the cruel alternative, either to abandon our homes, acquired by so many privations, or submit to the most intolerable of all tyranny, the combined despotism of the sword and the priesthood." This was one of the basic reasons why the Declaration of Texas Independence was written. It is to be hoped that the priesthood of Texas will never lend their influence to the intolerable doctrine of military necessity as a means of overruling our Constitution, or to carry out any particular theory or political contention. Texas patriotism discarded in the Declaration of Independence the idea of military authority, and engaged in a war to the successful extermination of that thought in the battle of San Jacinto. This gave to the world a new republic with its emblem of authority—the Lone Star flag. It is a singular contention, novel, fallacious and destructive, that the Legislature of Texas, under delegated authority, can overturn the Constitution and inject into our government the doctrine of

military necessity as a means of overcoming and destroying the republican form of government.

Another contention of the Attorney General is the opinion in the Bell case, 28 Texas Crim. App., 96, is authority for his proposition that the Legislature may suspend the constitutional provisions, article 16, section 20. That opinion was written by Judge Hurt. The right of the people to dominate the government in all of its branches, including the police power, found no stronger advocate in public life and on the bench than Judge Hurt. Such imputation is foreign to everything Judge Hurt ever wrote in his judicial life. He never used his great powers or lent them to the doctrine of subversion of our government by delegated authority. His whole judicial life was directly exercised to prevent such catastrophe. The Bell case, supra, is not authority for the proposition that Judge Hurt held the police power of the State could be exercised in opposition to section 20, of article 16. The question at issue in that case was simply the power of the Legislature to dominate and control, and even if necessary abrogate the selling of intoxicants in saloons. That section 20, article 16, did not abolish the police power of the State in this respect would hardly be questioned, but it will be noticed in this connection that the police power of the State could not operate on saloons in local option territory. The very statement of the fact that local option was in effect is irrevocable evidence of the fact that saloons did not exist in such territory. In fact, they could not exist because the local option law prohibits the sale of intoxicants within the specified boundaries where the law is operative. There ought not to be any conflict between the local option clause of the Constitution and the police power properly applied. The police power is subordinate to the provisions of that section of the Constitution, and can not exist in said territory so far as controlling the sale of intoxicants. The people reserved that to themselves and segregated it from the legislative department. Judge Brown, in the case of State v. Texas Brewing Co., held that where the people acted upon this local option law and put it into operation within the given territory, it became as paramount as the Constitution itself and superior to legislative authority. Judge Brown in so stating was but following the unbroken line of decisions in Texas since the opinion in the Robertson case, 5 Texas Crim. App., 155. The opinion in the Robertson case lays down the proposition that where local option is adopted it is superior to all laws that may come in conflict with it, and the decisions from that day until the present have with unanimity held to the same doctrine. See Ex parte Bell, 24 Texas Crim. App., 428; Ex parte Sundstrom, 25 Texas Crim. App., at page 159; Dawson v. State, 25 Texas Crim. App., 670; Lawhon v. State, 26 Texas Crim. App., 101, and Robinson v. State, 26 Texas Crim. App., 82. The opinions in the latter two cases were written by Judge Hurt. He also concurred fully in the proposition laid down in Ex parte Bell, Ex parte Sundstrom, and Dawson v. State, cited supra. These questions are practically the same and run without conflict through all the decisions

and jurisprudence of Texas. Judge White, in Ex parte Bell, said: "Nor do we propose to discuss the scope, extent and purpose of 'local option,' as provided in our Constitution and laws, nor how far it is to be considered exclusive as a prohibitory law in our State. In fact, we do not propose to discuss generally prohibitory legislation at all; because, in our view of the case, prohibition in one of its aspects alone is involved in the matters submitted, and that is the right and power of the Legislature to prohibit 'drinking saloons' or saloons for the purpose of carrying on the liquor traffic. Upon the question of this power in the Legislature we have found no difference of opinion, either in the decisions of courts or the standard authorities upon the subject. All agree that the Legislature has authority absolutely to prohibit them." In Bell v. State, 28 Texas Crim. App., 96, this was the question at issue: the domination of the saloon by the police power. The question of the right of the Legislature to annul or suspend section 20, article 16, was not discussed by the court in any of those opinions.

From the Sundstrom case, supra, this quotation is made: "The theory of appellant is that the said article 16, section 20, and the legislation thereunder, should control the question of the liquor traffic of the State to the exclusion of all legislative regulation of said traffic except under and by virtue of said article and section. This question was before this court in Ex parte Bell, 24 Texas Crim. App., 428, and was there decided adversely to the position assumed. That case is directly in point. Bell brought his writ of habeas corpus to test the constitutionality of the Act of 1887 (General Laws, p. 58), amendatory of former Acts of the Legislature. He admitted non-compliance with that law and all necessary facts, and hinged his case on the constitutionality of the law, from the standpoint that said Act was prohibited by article 16, section 20, of the State Constitution.

"The court held the position untenable, refused the writ and remanded the relator to custody. This, as I view it, settles the question and holds that the said article and section do not limit the power of the Legislature on any question in which the liquor traffic may be represented, save and except to absolutely prohibit its sale or where the local option happens to be in force. (Ex parte Bell, 24 Texas Crim. App., 428.) This same view has always been held by this court. The local option law, where it is in force, operates as a sort of supersedeas upon the general laws of the State regulating the sale of liquor in the given territory, but as soon as the local option law is repealed, the State laws operate at once." Judge Hurt concurred in this opinion as stating the correct doctrine. He wrote the opinion in Ex parte Fields, 39 Texas Crim. Rep., 50. From page 54 this quotation is made from that opinion: "Anti-prohibition is in force in every county, justice precinct, town, etc., in this State, unless voted on at an election held for that purpose."

It would be useless to follow these decisions. The Dawson, Lawhon, and Robinson cases, supra, are directly in line to the same effect, and discuss the same principle and announce the superiority of the local

option law over the Acts of the Legislature when once placed into operation. This question came in full review in the Lewis case, 58 Texas Crim. Rep., 351, in which Judge Ramsey wrote a masterful opinion reviewing the subject and the authorities, and the doctrine was again asserted and maintained, and so far as the writer is aware this doctrine has not been questioned except it be in the present case. The result of this jurisprudence and all these cases is that the Legislature is powerless to interfere with local option after it has been once put into operation by a vote of the people. It is sacred from the touch of legislative action, and, as Judge Brown says, it becomes as paramount as if it was a part of the Constitution itself.

Another case written by Judge Hurt might be casually mentioned: Huntsman v. State, 12 Texas Crim. App., 619. This was one of the most masterful opinions ever written by that great judge. The case was written especially with one point in view, and that was to demonstrate the superiority of the Constitution over legislative action. Anyone who will read that opinion would have his mind disabused of any thought connected with the life of Judge Hurt that he stood for the abolition, suspension or alteration of our Constitution by any authority except by the people themselves, especially emphasizing the fact that this could not be done by legislative action. He was writing that opinion with reference to what is known as the "common sense indictment bill." See also Powell v. State, 17 Texas Crim. App., 345, where Judge Hurt discussed the question of jeopardy.

I have said this much in justice to the memory of Judge Hurt, and because of my long personal and judicial intimacy with him. For twelve years he and I were intimately associated together in connection with the Court of Criminal Appeals in public life, and now for the first time in this case it is urged that Judge Hurt favored the doctrine of a suspension or overturning of the Constitution, or any of its provisions, by the Legislature. This is an unjust criticism and an imputation not warranted by his life on the bench. I regret the contention has been made, or that I should feel called upon to defend the judicial life and character of that great judge.

I do not care to discuss particularly the questions decided in the original opinion by Judge Morrow. His reasoning is irrefutable on the question of the superiority of the Constitution over legislative action. The legal mind ought not to question for a moment the fact that the Legislature is inhibited from suspending constitutional provisions. The consequences of such a conclusion would be appalling, for if the Legislature can suspend one clause of the Constitution, it can suspend any or all of such provisions, and even the Constitution in its entirety. This would empower that body to suspend the right of trial by jury, and overturn that clause which inhibits the suspension of the writ of habeas corpus. It would make the military superior to the civil authority; it would overturn section 2 of article 1, destroy article 17, abolish article 1, section 29, and make the Legislature autocratically supreme.

It would invest Texas with militarism to the overturning of the civil authority, and would do away with the power of the people to make a constitutional form of government.  It would seem strange that it should be seriously contended in the courts that the military should dominate the civil.  The supremacy of militarism has recently plunged the world in the greatest war in its history.  In the vortex of that mighty struggle the United States was drawn with its untold resources of men and means.  We have just succeeded, as we understand the current history of today, in crushing militarism in Europe.  A success there of militarism would have endangered our American institutions as we hold them and it was anticipated would subject us to the ultimate power of military Germany.  It is a strange proposition, after having succeeded in crushing this spirit and this idea of government in Europe, and upon the battlefield on which so many of our men sacrificed their lives, that it should be urged now in civil life and in the courts, that we should place in our government the same proposition as a means of menace to our government.  We had thought that in crushing that spirit in Germany it was forever eliminated from consideration in American institutions.  If the Attorney General's contention is correct, that military necessity can dominate our government, then our struggles in the great war have been in vain.  It ought not to be expected that the courts of this country will lend their aid or endorsement to such a catastrophe.

The authorities holding that the people of the county may hold a local option election and by a majority vote establish prohibition effective throughout the county, even though a precinct had decided to the contrary, are supported by the provisions of article 16, section 20, of the Constitution.  These authorities when analyzed are consistent with and support the original opinion in this case

It is also provided by the Constitution that by their vote the people may change, alter or amend the Constitution as they deem proper, and thus supersede existing provisions of that instrument.  Article 1, section 2, article 17.  Therefore, the people may by this means supersede the entire local option provision of the Constitution, and by so doing repeal and annul the law as adopted by the people in the county, and its subdivisions.  This can be accomplished only by a vote of the people. It can not be done by a vote or Act of the Legislature.  To that body such power has not only not been delegated, but has been expressly withheld as evidenced by provisions of that instrument above cited.

These provisions and authorities are not only consistent with the original opinion, but are basic in its support.

In writing what I have written it was with a view of concurring with Judge Morrow in the opinion originally handed down that he was correct, and ought not to be to our people a subject of discussion or question for debate.

I, therefore, concur in overruling the motion for rehearing.  Let the Constitution still be paramount as it is written and ordained, and so

remain until the people see proper to change it in the manner pointed out and required by the Constitution, or by ordaining another Constitution. ·

PRENDERGAST, Judge (dissenting).—Section 20, article 16, of the 1876 Constitution was:

"The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

The 1891 amendment merely added these words in parenthesis: "(or such subdivisions of a county as may be designated by the Commissioners Court of said county)," after the word city.

In his original opinion Judge Morrow says the question of whether this section deprived the Legislature of the police power to enact the Statewide prohibition law, "has never been before the courts." In this he is mistaken, as I have shown in my original dissenting opinion herein. It was expressly held in Bell v. State, 28 Texas Crim. App., 96, and other cases, that said section did not deprive the Legislature of said power. But as he so asserts, I will discuss said section itself, and from that standpoint, to see if it had that effect.

The saloons are the only mediums in this country now (and have always been), by which intoxicating liquors are dealt out and sold as a beverage. The breweries (pro-German institutions), distilleries and wholesale liquor dealers are only the sources from which saloons stock up.

The tremendous evil effects of the liquor traffic—saloons—as told by the United States Supreme Court, and every State court and text writer, and by everybody else, in this country, as briefly stated in my original dissent, makes it so imperative that the Legislature shall have the police power to deal with and prohibit the sale of such liquors, that no provision of the Constitution should be held to deprive the Legislature of that power unless it be clear and explicit to that effect, and that the intention of the constitutional convention and people could not otherwise be construed.

There is nothing whatever in said section 20 which *expressly* forbade or prohibited the Legislature from enacting a perfectly valid statute prohibiting the sale of such liquors "all over the State"—Statewide. By no torturing of the language or words of said section can it be held to *expressly* forbid or prohibit the Legislature from exercising said police power.

If it had been so intended, the constitutional convention would have said so in plain and unmistakable language in said section itself, by adding thereto some such language as this: "The sale of such liquors shall not otherwise be prohibited by the Legislature"; or: "The Legislature shall not otherwise prohibit the sale of such liquors"; or by some

other language more, or equally, as explicit. By not thus, or in some other explicit way, so prohibiting the Legislature, it is certain that the convention and people did not intend to deprive the Legislature of such an important and necessary police power.

Instead of that section depriving the Legislature of that police power, on the contrary, the Constitution expressly (if need be), conferred that power on the Legislature.

For section 1, article 3, of the Constitution provides: "The legis-lative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"

Our Supreme Court, by Judge Brown, said: "'The legislative power of this State' means all the power of the people which may properly be exercised in the formation of laws against which there is no inhibition expressed or implied in the fundamental law." (Brown v. City, etc., 87 Texas, 15.) And: "The Legislature of Texas may exercise any power that could be exercised by a constitutional convention, except wherein the Constitution contains a prohibition expressed or implied." (Id., p. 14.)

Again he said: "When a judge pronounces a law to be contrary to the Constitution, he must be able to put his finger upon the provision of that instrument which prohibits the act, or from which the prohibition *necessarily* arises." (Harris Co. v. Stewart, 91 Texas, 143.)

This court, by Presiding Judge White, in Holley v. State, 14 Texas Crim. App., 511, discussing the difference between the United States Constitution and that of the States, pointed out, as all courts do, that the United States Constitution "is but a grant of legislative power," and Congress, in passing laws, "can only exercise such authority as is granted"; but that State Constitutions "are only limitations upon the complete power with which otherwise the legislative department of the State was vested in its creation"; then quoting from Judge Cooley, said: "The law-making power of the State recognizes no restraints and is bound by none, except such as are imposed by the Constitution. . . . Its object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations, the power to make laws would be absolute. These limitations are created and imposed by *express* words, or arise by *necessary* implications."

These principles are absolutely true by our form of government and Constitution, whether any court ever so held or not.

One of the fundamental rules in construing a constitutional provision is this: "The court should look to the history of the times, and examine the state of things existing when the Constitution was framed and adopted, with a view to ascertaining its objects and purposes. It should consider, for example, the former law, the mischief and the remedy intended to be provided." (12 Corpus Juris, p. 710.) (See the authorities cited.)

Again, as held by our Supreme Court in Cox v. Robison, 105 Texas,

426: "The fundamental rule for the government of courts in the interpretation or construction of a Constitution is to give effect to the intent of the people who adopted it. *The meaning of a Constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it.*" (Italics mine.)

Applying these rules, we find: That section 48, article 12, of the 1869 Constitution, which went into effect in 1870, provided: "The Legislature may prohibit the sale of intoxicating or spirituous liquors in the immediate vicinity of any college or seminary of learning; provided said college or seminary be located other than at a county seat or at the State capital." (Harris' Constitution, p. 747.)

After this provision went into effect the Legislature, at every session, was besieged for the passage of special laws prohibiting the sale of such liquors in the vicinity of every college or seminary in this State. I have not made a careful search for these special laws passed from 1870 to 1875, the time it was in effect, but in the hurried examination I have made I find special laws prohibiting the sale of such liquors at 169 places in different localities all over the State. In 1870 the first session of the Legislature, after said provision went into effect, there were such special laws for twelve different places. From year to year thereafter the number increased, so that in 1875, the last year that provision was in effect, such special laws were passed for sixty-one different places in the State, scattered all over it. In fact, prior to the Constitution of 1876, the greater bulk of the acts passed by the Legislature, for that and other purposes, were special laws. Up to that time there was no constitutional provision prohibiting or preventing the passage of special laws. The Constitution of 1876, in order to remedy this evil, inserted many provisions in the Constitution preventing and prohibiting the passage of special laws by the Legislature.

Of course, the people and their delegates to the constitutional convention of 1875, knew of all this condition of affairs, and they wanted and intended to remedy it. They did so, as to the sale of liquors, by placing said section 20 in the Constitution of 1876, instead of said section 48 in that of 1869.

Thereby these objects, purposes and intentions by them were attained: 1. They prevented the time of the Legislature from being taken up and the expense to the State, in the passage and publication of all these special laws. 2. They permitted the people of the several counties and stated subdivisions thereof, to determine for themselves, by vote, they wanted prohibition "within the prescribed limits," instead of by special laws restricting prohibition to "the immediate vicinity of any college or seminary" only. The people of many counties or subdivisions thereof wanted the liquor traffic prohibited within their limits, whether they had a college or seminary therein or not, and even if it included a county seat or the capital. 3. It prevented fights for and against such special laws being made before the local representative and senator and Legislature itself from the territory of such schools of learning. 4. As our

Supreme Court in 1856 had held (Swisher case, 17 Texas, 441), that the Legislature could not pass a statute, and "refer it to the voters for their ratification before it became a law," because such manner of enacting a law was not authorized by the then Constitution, the people wanted, and intended, that the effect of that decision should not stand in the way of the people in the several counties and subdivisions thereof, as to their several localities merely, from legally voting that the sale of such liquors "should be prohibited within their prescribed limits." Hence by said section 20, they commanded the Legislature to pass a law to provide for elections in such localities. Thereby avoiding expressly the effect of said decision, and expressly legalizing such elections for such localities only.

It is so certain that said section 20 did not *expressly* prevent or prohibit the Legislature from enacting said Statewide law, and did not deny the Legislature the police power to do so, a further discussion of that question is unnecessary.

My associates do not contend—and no one does, so far as I know—that said section *expressly* so provided; but they contend, and hold, in substance and effect, that it does so alone by *implication.* And they do not get this *implication* from said section itself, but drew it from certain decisions of this court, rendered at different times long after the Constitution of 1876 had been adopted. They are cited and quoted from by Judge Morrow in his original opinion. They thus attempt to make said section 20 so do by *implication.* I so understand their opinion. However, it speaks for itself.

I will, therefore, now discuss that question—whether said section 20 by *implication* denied to the Legislature, and prohibited it from exercising, said police power, and will also notice the decisions they rely upon for that effect.

Undoubtedly, the true principle is what our Supreme Court, in Cox v. Robinson, supra, said:

"The meaning of a Constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass on it."

Chief Justice Stayton, for our Supreme Court in Lytle v. Halff, 75 Texas, 132, said: "It has frequently been said that an act of the State Legislature must be held valid unless some superior law in *express* terms or by *necessary* implication forbade its passage.

"A prohibition of the exercise of a power can not be said to be necessarily implied, unless looking to the language and purpose of the Constitution it is evident that without such implication the will of the people, as illustrated by a careful consideration of all its provisions, can not be given effect."

In Imperial, etc., v. Jayne, 104 Texas, 411, Judge Dibrell, quoting from Judge Stayton in Smisson v. State, 71 Texas, 233, said: "A power clearly degislative in its character, not absolutely denied to the Legislature, is not to be held denied by implication unless its exercise

would interfere with, frustrate or to some extent defeat the exercise of a power expressly granted."

"The power of a State Legislature is subject not only to express, but also to implied, limitations contained in the State Constitution. Such limitations on the power of the Legislature, however, will not be raised by implication unless this intention *clearly* appears *from the instrument itself.*" (12 C. J., p. 750.)

Let's consider and analyze section 20 of and within itself. It was only a clear command to the Legislature to enact a law. What law? To license the sale of liquor? No. To remove all license from the saloon-keeper? No. To turn the liquor traffic loose from all regulations and restraints? No. The Legislature was commanded to pass no law whereby the voters of any territory could possibly do any of those things.

But the law the Legislature was commanded to pass was merely to permit the voters in a county or certain subdivisions thereof to do one certain thing only. What were the voters to be authorized to do? *Enact* any law? No. *Adopt* any law? No. What then? Only and merely that they, by vote, "may determine that the sale of intoxicating liquors shall be prohibited within the limits" of such county or subdivisions thereof. Simply that and nothing more. After they so "determined" that one thing and that only, it was the duty of the *Legislature* to pass any and all laws necessary to enforce their "determination"—prohibit the sale of such liquors in such voters' local "prescribed limits."

The above questions and answers may be "primer" method, but I think they are pertinent to illustrate and determine what was meant and intended by said section.

The Commissioners Court could not enact any law for their county, making it an offense to sell, and prescribing a punishment therefor; nor could the justice of the peace have so done for his precinct; nor could the mayor and city council of any town or city have so done for their town or city, nor could the people themselves have done so. They were all powerless to so do. No other body whatever except the *Legislature* could enact such a law.

The Legislature, therefore, at no time and in no way passed any law making it an offense to sell liquor in any county or subdivision thereof, fixing the punishment therefor, and submitted such law to the voters for them to enact, adopt or reject. And the voters of no county or subdivision ever at any election voted to enact, adopt or reject, nor for or against any such law.

But the Legislature, in strict compliance with said section 20, at its first session, did enact a law (Act approved June 24, 1876, p. 26, 8 Gammel's Laws, p. 862) whereby the voters of any county or said subdivisions thereof, were authorized to hold elections within their limits, and to vote "For prohibition" or "Against prohibition," as they desired. And if a majority voted "For prohibition" the Commissioners Court

were required to enter an order so declaring and prohibiting such sale within such limits, publish such order, etc. Section 5 then declared that when all these things had been done, and if thereafter, "any person shall, within such bounds, sell any intoxicating liquor he shall be fined not less than $25 nor more than $200."

This Act nowhere and in no way submitted the offense prescribed and the punishment therefor to the voters, and they did not vote for or against it, and were never authorized in any way so to do.

Our Supreme Court in Ex parte Dupree, 101 Texas, 155, through Judge Brown, truly and correctly held what said section meant in this regard, saying: "The Constitution does not require the Legislature to submit to the vote of the people the law which is necessary to enforce prohibition, and it has not been done; that is a proper subject for legislative action." And in reply to the contention of the appellant to the contrary, said further: "The objection that the law under investigation goes beyond the limits prescribed by the Constitution is based upon the idea that the people of the particular locality vote upon and adopt the local option law itself, whereas by the plain and unmistakable terms of the Constitution the Legislature is required simply to enact a law by which the people of the territory or subdivision may vote upon the question of whether the sale of intoxicating liquors shall be prohibited within that territory. The Legislature could have enacted the law simply submitting this question to the vote of the people and subsequently have enacted the law which they did in order to carry the result of that vote into effect; or the Legislature might have, as they did, enacted a general law upon the subject with a provision that it should become operative in any of the subdivisions named in the Constitution when the people had voted in favor of prohibiting the sale of intoxicating liquors within that subdivision." This holding was reiterated in substance and effect in Dupree v. State, 102 Texas, 460.

In Fitch v. State, 58 Texas Crim. Rep., 373, this court cited said Dupree case and followed it. The Dupree case is absolutely correct and has ever since its rendition been followed by this court in the Lewis case and a large number of other cases. The Dawson case, 25 Texas Crim. App., 670, and the Lewis case, 58 Texas Crim. Rep., 351, were urged as in point and conclusive against what was held in the Fitch case, but Judge McCord, who wrote that opinion for the court, said:

"However, in none of these cases is the contention made or is it announced that after the people have adopted local option, the Legislature is denied the right to pass all needful legislation to make effective the law that has been adopted by the people; and when the people adopt local option they not only have a right to make the demand upon the Legislature, but the obligation is binding upon the Legislature under the Constitution of the State to see that all necessary legislation is enacted to make successfully effective the enforcement of the law in the prohibited territory. Section 20 of article 16 of the Constitution directs the Legislature to pass laws whereby the people from time to time may

determine whether the sale of intoxicating liquor shall be prohibited within the prescribed limits. Under this constitutional provision, unless there are some restrictions growing out of the local option law, as adopted by the people, which may be construed as a part of the law itself, the power of the Legislature to enact all suitable and necessary laws for the enforcement of the will of the people on the subject of local option, is not in the least interfered with or limited; nor does it require or authorize the Legislature to submit to the voters the law which may thereafter be enacted to enforce prohibition. The same would be within the power of the Legislature to enact and it would become immaterial that the Act was not the law at the time local option was adopted. . . . The Legislature could have enacted a law simply submitting to the people the question of whether they would have local option or not, and subsequently have enacted a law defining offenses in order to carry the result of the vote of the people into effect. See Ex parte Dupree, 101 Texas, 150, 105 S. W. Rep., 493. And if the only crime that had been defined by the Legislature at the time that matter was submitted to the people, was simply a sale with the penalty attached to it, and the people voted on the law with that offense defined, this would not take away from the Legislature the right to define new offenses within the prohibited territory. All legislative power is vested in the Legislature and can not be exercised by any other body, except as provided by the Constitution. We, therefore, hold that the power to legislate for the efficient enforcement of local option laws is not taken away from the Legislature after the adoption of local option, . . . and that if new offenses grow out of the violation of this law, that can not be covered by the laws already in existence, the duty and obligation rests upon the Legislature to see that efficient laws are passed to meet each new emergency. If an element should invade local option territory opposed to the enforcement of local option laws and should throw its force against the will of the people and by its craft and cunning devise schemes and means to defeat the purpose of the law and invent a method whereby, through the forms of law, they should evade the crime that had been defined by the Legislature, it would be a monstrous doctrine to hold that the Legislature is powerless to enact legislation defining offenses and prescribing penalties for the new conditions that may arise because the same was not an offense at the time that local option was adopted."

If the convention and people had intended by implication by said section to have denied the Legislature said police power to prohibit it from passing a Statewide prohibition law, they would have included *the State* as well as the county and subdivisions thereof therein, by having said section read thus: "The Legislature shall, at its first session, enact a law whereby the qualified voters *of the whole State*, any county," etc., with the remainder of the section as it is. If this had been done then it might, with some show of reason, have been contended that the Constitution by *implication* forbade the Legislature such police power.

But as they did not intend to deny such power they, of course, did not include *the State* therein.

Then what inhibitions by *implication* could be drawn against legislative action from said section? The most important were: 1. That the Legislature was deprived of the power, which it formerly had, of itself at its own initiative, or that of the local people at said schools, passing any special law—or even general—prohibiting the sale of such liquors at any given locality where a college or seminary was located, or other given locality only. 2. From passing any law prohibiting such sale in any large or small local portion of the State, other than specified in said section, towit: a single county, justice precinct, town or city; and then even for such locality merely, until and unless such local territory first "determined by a majority vote that the sale of such liquors within such local territory alone, should be prohibited therein." 3. From passing any law whereby the whole State might determine by vote at a State election that they wanted Statewide statutory prohibition.

At least, no other important implications could be drawn therefrom, and, without doubt, no implication could be drawn therefrom whereby the Legislature was inhibited from exercising that said police power which had been expressly conferred by said section 1, article 3, to prohibit the sale of such liquors "all over the State."

I will next briefly discuss the cases cited by Judge Morrow, from which—*not the Constitution itself*—it is claimed the Legislature by *implication* was denied the police power to pass the Statewide Act.

He cites and quotes from said Dawson case, 25 Texas Crim. App., 670. Therein it was shown that at a local option election in Erath County for the whole county prohibition carried and was put in force in 1886. That just after one year and within two, a second election was held therein in which prohibition was defeated. The State contended that as the Act of April 1, 1887, page 96, 9 Gammel's Laws, page 894, prohibited a second election within two years from the first, said second election was void and prohibition was still in force. The court held that as said Act of June 24th, supra, authorized a second election just after one year, the Legislature could not change that law to two years, and that said second election was valid, under the mistaken idea and statement that the voters voted to *adopt,* and by vote did *adopt,* the law as it was when the first election was held.

Another case he cites is the said Lewis case. Therein it was shown that at a local option election in 1902 prohibition carried and was put in force in Hill County. The law at that time made it a misdemeanor only to sell in prohibition territory. Before the offense therein was committed, the law was changed by the Act of April 24, 1899, page 396, so as to make it a felony instead of a misdemeanor to violate the prohibition law. Judge Ramsey attempted to uphold the error in the Dawson case by the *stare decisis* doctrine, and following the Dawson case, held that as the offense was a misdemeanor when prohibition was first

put in force the Legislature could not so amend the law as to make it a felony under said election.

The *stare decisis* doctrine has little or no application to criminal law, and especially it has none to the construction of any constitutional provision.

In the Wagner case, 53 Texas Crim. Rep., 306, this court, by Judge Ramsey himself overruled several of the decisions wherein it had held a certain character of evidence in a prohibition case was inadmissible, and therein held it was admissible. In a motion for rehearing his decision was vigorously attacked, and, in effect, the *stare decisis* doctrine invoked. Judge Ramsey after conceding his decision was contrary to previous decisions said: "It was written (the opinion therein) with full knowledge of what had heretofore been held by this court, but represented the best thought and the deliberate convictions of the court. . . . It was based on what occurs to us such conclusive reasons, and upon principles so obvious and evident, that we felt that the law should be so written and declared. We then thought, as we now think, that no defendant had the conclusive right to shield himself from wrongdoing under the former holding of this or any other court. There can be, as we believe, no such thing as a vested right to commit crime, and when we reached the conclusion that the interest of society, the due enforcement of law, its proper interpretation, and the good of the commonwealth require that a rule should be written more in consonance with reason and more in accord, as we conceive, with common sense and logic, it was so written in the opinion deliberately, and with due consideration of all there was implied in it."

In Willis v. Owens, 43 Texas, 48, the constitutionality of an Act of the Legislature, in at least four, if not more, cases, and for quite a number of years, had been upheld by that court. In that case the question was again raised, and the doctrine of *stare decisis* invoked. The court, by Judge Moore, held: "We can not, however, regard the rule of stare decisis as having any just application to questions of the character involved in these cases. This doctrine grows out of the necessity for a uniform and settled rule of property, and definite basis for contract and business transactions. If a decision is wrong it is only when it has been so long the rule of action, as that time and its continued application as the rule of right between parties demands the sanction of its error. Because, when a decision has been recognized as the law of property, and conflicting demands have been adjusted, and contracts have been made with reference to and on faith of it, greater injustice would be done to individuals, and more injury result to society by a reversal of such decision, though erroneous, than to follow and observe it. But when a decision is not of this character, upon no sound principle do we feel at liberty to perpetuate as error, into which either our predecessors or ourselves may have unadvisedly fallen, merely upon the ground of such erroneous decision having been previously rendered.

"The questions to be considered in these cases have no application

whatever to the title or transfer of property, or to matters of contract. They involve the construction and interpretation of the organic law, and present for consideration the structure of the government, the limitations upon legislative and executive power, as safeguards against tyranny and oppression.  Certainly it can not be seriously insisted, that questions of this character can be disposed of by the doctrine of stare decisis."  Said previous decisions were overruled and the Act held unconstitutional.

In Higgins v. Bordages, 88 Texas, 466, it was snown that many years before the Constitution had been construed and held as having a certain effect in the case of Lufkin v. Galveston, 58 Texas, 545.  The question was again raised in this Higgins case and said Lufkin decision was overruled.  The *stare decisis* doctrine was again invoked.  That court by Judge Brown cited, quoted and approved said decision in the Willis case.

In the Cline case, 36 Texas Crim. Rep., 353, Judge Davidson said: "The rule of stare decisis has but little application in criminal jurisprudence, and ought to have none, when wrong, and tending to overturn the plainly written law (Constitution).  May it not be said correctly, in criminal law, in this connection, that adjudicated error, persisted in, can not make truth of that error.  Can any question truthfully be said to be settled until it has been correctly settled.  Courts may declare it settled, but these rulings will be questioned and assailed until they are overturned, and the truth is made to prevail.  This is right, and it should be so."

Other decisions are cited by Judge Morrow to the effect that when the prohibition law is put in force in a given territory by a vote at a local option election, it can be vacated or set aside only by a vote of the voters of the same territory.

None of these decisions can rightfully or legally be held to engraft on said section a denial by *implication,* of said police power to the Legislature.  But if they could, *they are but judge made law, not by a constitutional convention* nor by the people.

A great constitutional lawyer, Judge Wannemaker of the Supreme Court of Ohio, has truly said: *"Judge made law* is bad enough, but *judge made constitutions are infinitely worse."*  He might appropriately have further said that "judge- made constitutions are detestable and abhorrent."  The people and the constitutional conventions have no voice in judge made constitutions.  Such a constitution is "We, the Judges," enact it.  It is not done by "We, the people," nor by "We, their representatives," in convention assembled.

Ever since local option was provided for by said section the people and their representatives, the Legislature, have always had great trouble in having prohibition enforced.  Their laws, duly and constitutionally enacted by the Legislature and approved by the Governor have frequently been declared invalid and void by the Court of Criminal Appeals of Texas, often by two members only, which really, in effect, is by one member alone—one upholding the law, another against it, and then

the other one judge deciding the question. Therefore the question al-
ways before the Legislature, in enacting laws to enforce prohibition, has
been, not is the law valid, but will the Court of Criminal Appeals by
a majority of one member, as in this instance as to Statewide, strike
down the law—kill it? Or, will two of the judges let it stand? The
Constitution should require the concurrence of all three judges to strike
down and kill any law duly enacted by the Legislature.

By said section 20 it was just as imperative upon the Legislature to
pass a law to provide for a prohibition election for any justice's precinct,
town or city, as it was to provide for an election by the whole county.
It nowhere, and in no way, prescribed that if an election was held in a
whole county and prohibition carried that no election could thereafter
be held for a justice's precinct, town or city therein while the whole
county was still under prohibition. Precisely the same language that
commanded a law for an election for the whole county, also commanded
one for a justice's precinct, town or city therein. The Legislature, in
compliance with said section, as stated, passed said Act of June 24, 1876,
supra, and provided for elections in the precincts, towns and cities as
well as for the whole county.

In the Whisenhunt case, 18 Texas Crim. App., 494, it was shown that
in 1883 the whole county of Hood had a local option election at which
prohibition carried and the law was put in force in the whole county.
The next year, while prohibition was still in force in the whole county,
precinct No. 1, in that county, had an election for that precinct alone
at which prohibition was defeated therein. This court, by Judge White,
held that the defeat of prohibition in said precinct fully and completely
repealed the prohibition law in that precinct, and that no prosecution
for a violation of said law in said precinct could be maintained, saying:
"One of the primary intentions was to give to justice's precincts, cities
and towns in a county the same right from time to time to test the matter
by election as a county should have." And again: "In a word, the
enumerated subdivisions, recognized both in the Constitution and the
law, were vested with the same rights as counties, provided they might
desire to exercise and enforce such rights independently of county action.
To say they can not have it independently of the rest of the inhabitants
of the county would be to nullify what every one must concede is the
plain intention and provision of the law."

Precisely the same holding was had in the Woodlief case, 21 Texas
Crim. App., 412, and such was stated to be the law in the Ladwig case,
40 Texas Crim. Rep., 586, at the time said decisions were rendered.
(See, also, Ex parte Pollard, 51 Texas Crim. Rep., 490.)

Therefore, by the said Act of April 1, to avoid said decisions said
Act of June 24 was amended, whereby it was enacted "when prohibition
has been carried at an election ordered for the entire county no election
on the question of prohibition shall be thereafter ordered in any jus-
tice's precinct, town or city of said county until prohibition has been
defeated at a subsequent election for the same purpose ordered held for

the entire county. . . . Nor in any case where prohibition has carried in any justice's precinct shall an election on the question of prohibition be ordered thereafter in any town or city in such precinct until after prohibition has been defeated at a subsequent election ordered held for such entire precinct."

Judge Hurt in Ex parte Fields, 39 Texas Crim. Rep., 55, said that this provision of the statute of 1887 was enacted because of the opinion in the Whisenhunt case, and said: "It is a very explicit expression of the Legislature's opinion as to the meaning of the Constitution on this subject." Therein he further said: "This question has been before the Court of Civil Appeals in three cases (Kimberly v. Morris, 10 Texas Civ. App., 592, 31 S. W. Rep., 809; State v. Harvey, 11 Texas Civ. App., 691, 33 S. W. Rep., 885; Adams v. Kelly, 17 Texas Civ. App., 479, 44 S. W. Rep., 529), and the same conclusion reached. The last opinion was rendered by Judge Stephens and cites us to several cases, and we think the question is forever put at rest." The question decided was: That no subdivision of a county could have a local option election after prohibition had carried in the whole county, because the said Act of 1887 so provided.

In the Raby case, 42 Texas Crim. Rep., 56, it was shown that precinct No. 4 of Bosque County had a prohibition election for that precinct alone, that prohibition carried and the law was duly put in force therein. Thereafter a prohibition election was held for the whole of Bosque County at which prohibition carried and the law was put in force in the entire county. Raby was prosecuted for selling liquor in that precinct under the precinct election, convicted and appealed. This court held that when prohibition was carried and put in force for the whole county "it absorbed the precincts of the county where local option formerly existed, the law being merged into a county local option law, so that the offense occurring in the precinct territory is no longer an offense against the precinct law, that having been obliterated, but it is an offense against the county local option law which alone exists in the territory."

Again, in Garrett v. State, 61 Texas Crim. Rep., 254, it was shown that several precincts of Clay County prior to the amendment in 1909, making it a felony to sell liquor in prohibition territory, had voted for prohibition and the misdemeanor prohibition law duly put in effect therein. That after said felony statute was in effect an election was held for the whole county and prohibition carried and was put in force in the whole county. After this Garrett made a sale of liquor in one of said precincts and was prosecuted and convicted. He contended that as the precinct law had never been repealed he could only be convicted of a misdemeanor. This court held that prohibition "in the whole county superseded and set aside the law in any of the precincts therein where prohibition had previously been carried and put in force," citing and quoting the Raby case. The same thing was held in substance in the Mayo case, 62 Texas Crim. Rep., 112.

The clear effect of said statute of 1887, and of these decisions construing said section 20, was, that notwithstanding the Constitution gave to the precincts, cities and towns the same right as it did to the county to hold local option elections and carry or defeat prohibition therein, yet that when the larger body—the county—voted for prohibition and the law was put in force therein, that said minor subdivisions of it had to give way. As expressed in the decisions, prohibition having carried in the whole county absorbed the precincts, towns and cities' rights and merged their rights into that of the county If that be the law—and it undoubtedly is—then when the Legislature enacted said Statewide law, the rights of the counties and subdivisions thereof were absorbed and merged into that of the State, and wherever they had carried prohibition in such minor territory the prohibition law for the whole State superseded and set aside the law in said minor subdivisions thereof.

Again, said section 20, as stated, required the Legislature to pass a law whereby the voters in the counties and subdivisions thereof might determine that the sale of intoxicating liquors should be prohibited therein Thereafter, when the Legislature enacted prohibition for the whole State the counties and subdivisions thereof had nothing to vote for and had no occasion to vote, and their rights are in no way invaded by said Statewide law. As shown above, they could not vote to license saloons or the liquor traffic, or do anything else other than to vote for prohibition if they wanted it, and when they had it by the Statewide Act they had nothing further for which they could vote.

In Judge Morrow's original opinion herein he sought to apply the well established principle of law to the effect that whenever the Legislature in the revision of its laws readopts a previous statute in the same language in which it was first enacted and the courts had, prior thereto, construed its meaning in a given way, that by re-enacting it, the construction given it by the courts would also be adopted, and he attempted to apply that doctrine to the amendment of said section 20 in 1891. Said doctrine had no application whatever to that amendment because it is plain therefrom what the object and purpose of that amendment was. This court had held that no election in any subdivision of a county for prohibition might be held other than in the three subdivisions mentioned in the original section, towit: justice precincts, towns and cities. The people wanted other subdivisions of the counties to have the same right, and, therefore, for the sole purpose of giving other subdivisions which are mentioned in parenthesis in the amendment, said amendment was submitted and adopted by the people. It could in no sense have been the intention of the people to ratify the various decisions on other matters.

On the contrary, if the people had in mind and intended to sanction and ratify any other construction than about said subdivisions by adopting said amendment, they undoubtedly had in mind and intended to adopt that construction of it given by this court in the Bell case, supra.

It is true that Judge Morrow stated that that decision was dictum, and in that way attempted to brush aside and do away with the effect of it.

Of course, any two members of this court, over the earnest opposition of the other, have the power to overrule any previous decision of this court and occasionally, if not frequently, do so. For them to hold any given decision is dictum and refuse to follow and be bound by it, has precisely the same effect as if they should expressly overrule such decision under the theory that it was not law, and for that reason refuse to follow it. That, in effect, was done in this case. Two judges of this court might attempt to make the distinction and declare the decision in the Bell case was dictum, but the common people who vote could and would not make such distinction. There can be no doubt but what the common people, the voters, would have great faith in said decision in the Bell case, even if it was contended by some persons that it was dictum. They must have known that that great lawyer, Judge Hurt, did not indulge in writing dictum opinions. But in saying that such decision by Judge Hurt was dictum, my associates were undoubtedly in error. It was not dictum. It was necessary and proper to the decision of the question that was raised and had to be passed on by the court in deciding the Bell case. That opinion was confined more largely to the decision of that question than the whole of the balance of it to others.

This opinion is already too lengthy. Notwithstanding this, I will encumber it with a copy of Judge Hurt's decision on said question. It is as follows:

"Counsel specifies in what particulars the Act is in violation of the State Constitution, insisting that the Act invades the exclusive power of counties, towns, and justice precincts of prohibiting the sale of intoxicating liquors—such power being conferred on them by section 20, article 16, of the Constitution.

"Evidently the local option provisions of the Constitution do not divest the Legislature of the power to prohibit the sale of such liquors, if the Legislature has such power independently of these provisions. It having been held by the Supreme Court of this State that the Legislature could not transfer to the people of the counties, etc., the authority by election or otherwise to enact local option laws for their counties, etc., because the people of a county, precinct, town or city have no legislative capacity—the power to enact laws being conferred by the Constitution on the Legislature—the local option provision of the Constitution became necessary in order to confer upon the people of the counties the lawmaking power. The object of this provision was not to deprive the Legislature of its power over the subject, but to confer upon the counties and subdivisions thereof constitutional authority to enact a law prohibiting the sale of such liquors within their respective boundaries. Such counties or subdivisions thereof may desire such a law while the others or the rest of the State may not.

"Now, to authorize the counties, etc., to act legally in this matter

the provision was engrafted upon our Constitution, the object being to permit the people of the counties, etc., to prohibit the sale of such liquors within their respective limits   This, and this alone, was the object of the local option provision.

"But let us view this subject from another standpoint.   Under the local option provision the people of a county can not, by an election for that purpose, enact a law prohibiting the sale of such liquors in quantities less than a quart, and permit it to be sold in greater quantities— they must prohibit its sale in all quantities—prohibit its sale absolutely except for certain named purposes.   It follows that if the local option provision has deprived the Legislature of the power to prohibit the retail of such liquors—prohibit saloons—then the power to prohibit saloons does not exist in this State.   Hence a very important police power is lost, or can not be exercised without absolute prohibition, and that, too, by the tedious and uncertain process of local option.   The people of the State might desire the prohibition of saloons, and not absolute prohibition, but we are seriously told they can not have this—that they must take absolute prohibition in order to obtain the suppression of saloons, and this they must receive as doled out to them by the separate action of counties, precincts, cities and towns .   This is absurd.   We will follow this subject but one step further.

"Local option prohibits absolutely in the county of its adoption.  Say that this divests the Legislature of the power to prohibit absolutely all over the State (a proposition too preposterous for discussion) may not the Legislature still retain the power to prohibit saloons?   Concede that the Legislature, by reason of the local option provision of the Constitution, can not prohibit the sale of such liquors absolutely, may it not still retain the power to prohibit the saloon?

"Now, it is well settled by all the authorities that the Legislature— no constitutional provision forbidding—has the right to absolutely prohibit the saloon business—the retail of intoxicating liquors.   If, therefore, the Legislature can prohibit this business absolutely, it follows inevitably that the Legislature can annex to the pursuit of such business just such conditions precedent as it may deem just, unless the citizen has granted to him affirmatively by the Constitution of the United States the right to sell such liquors by retail—to keep a saloon."

I have been materially aided by the able briefs herein of Attorney General Looney and his eminent assistants, Hon. C. M. Cureton and Hon. W A Keeling.   Therein they have given many other reasons, and cited many authorities sustaining the validity of said Statewide Act, but this opinion is too lengthy to mention or discuss them.

From no viewpoint is said Act unconstitutional or void.   It should not have been so held.

I respectfully dissent.